UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

ARTSKILLS, INC.,
    *Plaintiff*,

v.

ROYAL CONSUMER PRODUCTS, LLC,
    *Defendant*.

No. 3:17-cv-1552 (VAB)

**RULING AND ORDER ON MOTION TO DISMISS**

On September 14, 2017, ArtSkills, Inc. ("Plaintiff"), filed a Complaint against Royal Consumer Products, LLC ("Defendant" or "RCP"), claiming that RCP infringed on two of ArtSkills's patents. Compl., ECF No. 1. On January 30, 2018, RCP filed an Amended Answer with Counterclaims alleging that ArtSkills had engaged in false marking of its products. Am. Answer, ECF No. 34.

ArtSkills now moves to dismiss RCP's counterclaims alleging false marking. Mot. Dismiss, ECF No. 40. For the following reasons, the motion is **GRANTED.**

To the extent that the deficiencies identified in this ruling can be addressed, RBC may file a motion for leave to amend its counterclaims by August 24, 2018.

I.     **FACTUAL AND PROCEDURAL BACKGROUND**

    A.     **Factual Allegations**

ArtSkills, a Pennsylvania corporation, "develops and sells poster boards and poster board accessory products," including a "Trifold Display Board with Header." Compl. ¶ 1. ArtSkills claims that its Trifold Board is "a patented display board of the type used to display information

1

for presentation of any kind, such as presentations in classrooms, science fairs, offices, and household related displays," and that it "uniquely designed to remain securely closed and undamaged until ready for use." *Id.* ¶ 2.

ArtSkills alleges that RCP, a Delaware company with headquarters in Norwalk, Connecticut, "is a supplier of office products and related accessories for the consumer and business markets, and sells a variety of products such as printing paper, poster boards, and poster board accessories," including "the Eco Brites Project Board with Header" ("RCP Board"). *Id.* ¶¶ 3–4.

Artskills alleges that it introduced a number of poster board accessory products in 2005 "in an effort to create a niche industry for poster board accessory products." *Id.* ¶ 11–12. ArtSkills alleges that its "poster board accessory products line was an original and entirely new development in the paper and stationary industry," and that it "now sells poster board accessory products to more than sixty thousand stores across the country, including large retailers such as Wal-Mart, Target, CVS, Walgreens, and Michaels." *Id.* ¶ 12. Artskills alleges that because of its efforts at creating this niche market, "poster board accessory products became a new category within the stationary industry, and ArtSkills became the leader of that niche industry." *Id.*

ArtSkills alleges that RCP, which has been in the paper business for many years, began to introduce poster board products in the late 2000's to compete with ArtSkills products. *Id.* ¶ 13. ArtSkills argues that "in the past [RCP] has introduced products that were deliberately designed to duplicate the appearance of ArtSkills products." *Id.* ¶ 14. ArtSkills also alleges that "ArtSkills

is RCP's chief competitor in this market, and RCP continues to monitor ArtSkills' products and competitive activity." *Id.* ¶ 18.[1]

In 2012, ArtSkills allegedly began to sell its Trifold Display Board, "a multi-panel display board of the general types used [to] display information for presentations of any kind, such as presentations in classrooms, science fairs, offices, and household related displays." *Id.* ¶ 19. ArtSkills claims that "[a] key advantage of the ArtSkills Trifold Display Board is that, in contrast to previous designs, the ArtSkills Board consists of a single sheet of material, including three display panels and a header panel, which is uniquely configured to stay securely closed and intact until used by the consumer." *Id.*

ArtSkills alleges that, in 2013, RCP "introduced a product called Royal Eco Brites Project Board with Header," which allegedly included "all the unique functional features of the ArtSkills Trifold Display Board, and, like the ArtSkills Board, is configured in the same manner to stay securely closed and intact until used by a consumer." *Id.* ¶ 21. ArtSkills alleges that "RCP copied the appearance, design, and functional features of the ArtSkills Trifold Display Board in RCP's Project Board." *Id.* ¶ 22.

**B.     Procedural History**

On September 14, 2017, ArtSkills filed a Complaint against RCP, claiming that RCP had infringed on two of ArtSkills's patents: No. 9,495,886 ("'886 patent") and No. 9,076,352 ("'352 patent"). Compl. Specifically, ArtSkills alleged that RCP's Project Board, the "Royal Eco Brites

---

[1] On October 14, 2009, the parties allegedly entered into a confidential settlement agreement related to a separate lawsuit that ArtSkills filed claiming that RCP had infringed on ArtSkills's copyright by selling a product, "Attention Grabbers," that ArtSkills claims was "virtually indistinguishable" from an ArtSkills product, "Eye Catchers." Compl. ¶ 16. The parties allegedly settled in a confidential settlement agreement, which allegedly permitted the parties to publicly disclose that "Artskills objected to the packaging of certain poster board accessory products sold by Royal and filed a lawsuit. Royal disagreed with ArtSkills['s] concerns. Royal, however, did review the packaging of the products at issue and chose to moot the dispute by changing the packaging, and agreed to discontinue use of the certain packaging after a period of transition. The lawsuit has now been dismissed." *Id.* ¶ 17.

Project Board with Header," infringed on ArtSkills's patent '866, entitled "Multi-Panel Display Device, Blank, and Method of Forming the Device," and its patent '352, entitled "Multi-Panel Display Device, Blank, and Method of Forming the Device." *Id.* ¶¶ 24, 40; *see also* Patent '886, Compl. Ex. A, ECF No. 1-1; Patent '352, Compl. Ex. B, ECF No. 1-2.

On January 30, 2018, RCP filed an Amended Answer with affirmative defenses and counterclaims. Am. Answer.

RCP alleged that the Trifold Display does not practice design patent Nos. D739,467, D754,253, and D706,872, "because, among other reasons, the Trifold Display features slots on the free end of the header panel," while the patent "claims a design with slots on the edge that is attached to another piece via a 'preweakened area[.]'" *Id.* at 9–10; *see also id.* at 12–13 (claiming same for design patent No. D754,253); *id.* at 15–16 (claiming same for design patent No. D706,872). RCP alleged that the Trifold Display "features a slot with a ridge," while the patent "claims a design featuring a slot that is straight, without any ridge[.]" *Id.* at 11. RCP also alleged that the Trifold Board "features a header panel mounted by adhesive directly on top of a side panel," while the patent "claims a design where the header panel is attached via a [preweakened] area along the side of a side panel, such that the device would lie flat and feature four panels (two side panels, a center panel, and the header panel)," and that "[t]here is no claim that would cover a design where the header panel lies directly on top of a side panel before it is removed, as practiced by the Trifold Display." *Id.*

On February 13, 2018, ArtSkills moved to dismiss RCP's counterclaims under Federal Rule of Civil Procedure 12(b)(6) and Rule 9(b). Mot. Dismiss, ECF No. 40. RCP objected to the motion. Obj. to Mot. Dismiss, ECF No. 43. The Court held a hearing on Artskills's motion to dismiss on July 6, 2018. ECF No. 56.

4

## II. STANDARD OF REVIEW

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a), and a court will dismiss any claim that fails "to state a claim upon which relief can be granted," Fed. R. Civ. P. 12(b)(6). In reviewing a complaint under Rule 12(b)(6), the court applies a "plausibility standard" guided by "two working principles." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

First, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.") (internal citations omitted). Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679. Thus, the complaint must contain "factual amplification . . . to render a claim plausible." *Arista Records LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009)).

At this stage, a court takes all factual allegations in the complaint as true. *Iqbal*, 556 U.S. at 678. A court also views allegations in the light most favorable to the plaintiff, and draws all inferences in the plaintiff's favor. *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013); *see also York v. Ass'n of the Bar of the City of New York*, 286 F.3d 122, 125 (2d Cir.) ("On a motion to dismiss for failure to state a claim, we construe the complaint in the light most favorable to the plaintiff, accepting the complaint's allegations as true."), cert. denied, 537 U.S. 1089 (2002).

In addition, a claim for false marking must be evaluated under Federal Rule of Civil Procedure 9(b)'s heightened pleading standard. *In re BP Lubricants USA Inc.*, 637 F.3d 1307, 1309 (Fed. Cir. 2011) ("This court holds that Rule 9(b)'s particularity requirement applies to false marking claims[.]").[2] Under that Rule, the plaintiff must state "the circumstances constituting fraud . . . with particularity." Fed. R. Civ. P. 9(b). That is, the plaintiff must "'specify the time, place, speaker, and content of the alleged misrepresentations,' 'explain how the misrepresentations were fraudulent and plead those events which give rise to a strong inference that the defendant[] had an intent to defraud, knowledge of the falsity, or a reckless disregard for the truth.'" *Cohen*, 711 F.3d at 359 (quoting *Caputo v. Pfizer, Inc.*, 267 F.3d 181, 191 (2d Cir. 2001) (alteration in original)).

"The requisite 'strong inference' of fraud may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Shields v. Citytrust Bancorp, Inc.,* 25 F.3d 1124, 1128 (2d Cir. 1994).

### III.  DISCUSSION

"False marking can injure the public interest in full and free competition 'because the act of false marking misleads the public into believing that a patentee controls the article in question (as well as like articles), externalizes the risk of error in the determination, placing it on the public rather than the manufacturer or seller of the article, and increases the cost to the public of ascertaining whether a patentee in fact controls the intellectual property embodied in an article.'"

---

[2] The parties dispute whether the heightened Rule 9(b) standard applies to all elements of a false marking claim or just the second element, intention to deceive. See Opp. to Mot. Dismiss at 5; Reply at 1. The Court agrees with ArtSkills that RCP must plead all elements of a false marking claim with particularity under Rule 9(b). *See, e.g.*, *Juniper Networks*, 643 F.3d at 1350–51 (noting that "false marking claims must satisfy the heightened pleading standard of Fed. R. Civ. P. 9(b)" and applying Rule 9(b) standard to first element of false marking claim, marking an unpatented article).

*Juniper Networks, Inc. v. Shipley*, 643 F.3d 1346, 1351 (Fed. Cir. 2011) (quoting *Clontech*, 406 F.3d at 1356–57).

As a result, under 35 U.S.C. § 292, a false markings claim requires (1) an unpatented article; (2) a purpose to deceive the public; and (3) a competitive injury. *See Juniper Networks, Inc.*, 643 F.3d at 1350 (holding that a party that has suffered a competitive injury from a false marking must allege two elements to state a claim under § 292: "'(1) marking an unpatented article and (2) intent to deceive the public.'") (quoting *Forest Grp. Inc. v. Bon Tool Co.*, 590 F.3d 1295, 1300 (Fed. Cir. 2009)).

.       **A.      Unpatented Article**

First, to determine whether an "unpatented article" is covered by a design patent, the Court must apply the "ordinary observer test." *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 678 (Fed. Cir. 2008) (*en banc*) ("[T]he 'ordinary observer' test should be the sole test for determining whether a design patent has been infringed. Under that test, as this court has sometimes described it, infringement will not be found unless the accused article 'embod[ies] the patented design or any colorable imitation thereof.") (quoting *Goodyear Tire & Rubber Co.*, 162 F.3d at 1116–17). Under the ordinary observer test, "if, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other." *Gorham Mfg. Co. v. White*, 81 U.S. 511, 528 (1871).

ArtSkills argues that RCP has failed to plead that ArtSkills's Trifold Display Board was an "unpatented article" under any of the three patents cited in RCP's counterclaims and under 35 U.S.C. § 292(a). ArtSkills claims that RCP has alleged only minor differences between the

designs and the Trifold Display Board, and that those minor differences are insufficient to support the first element of a claim under Section 292(a). Mot. Dismiss at 12–13. ArtSkills also argues that "the test for design patent coverage is whether the designs were substantially the same from the perspective of an ordinary observer," *id.* at 13 (citing *Egyptian Goddess*, 543 F.3d at 670), and that RCP has not alleged particular facts "sufficient to support a conclusion the design patents identified in the counterclaims and the ArtSkills Trifold Display Board would not be viewed by an ordinary observer as substantially the same." *Id.*

RCP responds that it sufficiently "identified the patent ArtSkills improperly placed on the Trifold Display and offered three distinct bases for non-infringement" and argues that ArtSkills's arguments are "an improper attempt to engage this Court in a summary judgment adjudication of the ultimate issues." Opp. to Mot. Dismiss at 6.

The Court agrees that the parties' disputes over whether ArtSkills falsely marked an unpatented article are better addressed later in the litigation.

For example, ArtSkills argues that it has included a "photograph [that] demonstrates on its face that the ArtSkills product has been disassembled in a way to inaccurately suggest that the slots are located on a free end," and that "the photograph shows that the header panel has been separated from one of the side panels in order to falsely suggest that the slotted-end of the header was not attached to a side panel." Mot. Dismiss at 15. RCP responds that it adequately pled that ArtSkills's Trifold Display does not practice the design patent D739,467, because the patent claims a design with slots on the edge that is attached to another piece, and the Trifold Display has slots on a free edge, not another piece. Opp. to Mot. Dismiss at 6 (citing Am. Answer ¶ 10). RCP also argues that the Trifold Display "also does not practice a slot with a ridge and a header panel mounted by adhesive directly on top of a side panel." *Id.* (citing Am. Answer ¶¶ 10–14 for

description of inadequacies with first patent, ¶¶ 26–29 for second patent, and ¶¶ 41–44 for third patent)).

The issue of whether ArtSkills has falsely marked its Trifold Board with a patent therefore would be better answered later, after the parties have an opportunity to develop a record of the qualities of the Trifold Board and whether it meets the specifications of the design patents cited in RCP's counterclaim. *See, e.g.*, *Infinity Headwear & Apparel, LLC v. Jay Franco & Sons, Inc.*, No. 15-cv-1259 (JPO), 2017 WL 3309724, at *3 (S.D.N.Y. Aug. 2, 2017) (considering "a comparison of the properly construed claims to the accused product" on summary judgment); *Egyptian Goddess, Inc.*, 543 F.3d at 668–69 (reviewing design patent infringement claim on appeal from district court's order granting summary judgment "[a]fter comparing the claimed design and the accused product").

### B. Deceptive Purpose

Even if there were an unpatented article or RCP had sufficiently alleged this element at this stage of the litigation, however, the bar for proving deceptive intent in the context of a false marking case is "particularly high, given that the false marking statute is a criminal one, despite being punishable only with a civil fine." *Pequignot v. Solo Cup Co.*, 608 F.3d 1356, 1363 (Fed. Cir. 2010) (citing S.Rep. No. 82–1979, 1952 U.S.C.C.A.N. 2394, 2424 (1952) ("This is a criminal provision.") and *Clontech,* 406 F.3d at 1352 ("The statute supplies a civil fine.")).

In *In re BP Lubricants USA Inc.*, the Federal Circuit granted a writ of mandamus and directed the United States District Court for the Northern District of Illinois to grant a motion to dismiss a complaint for failing to meet the heightened pleading requirements of Rule 9(b). 637 F.3d 1307, 1313. The Federal Circuit found that when BP marked a product with an expired patent, the "complaint failed to allege any facts inferring that BP was aware of the patent's

9

expiration," and instead alleged only that "BP knew or should have known that the patent expired." *Id.* at 1311. A plaintiff claiming false marking therefore "is not empowered under the Rules 'to plead the bare elements of his cause of action, affix the label "general allegation," and expect his complaint to survive a motion to dismiss.'" *Id.* (quoting *Iqbal*, 556 U.S. at 687); *see also Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1330 (Fed. Cir. 2009) ("Pleading on 'information and belief' is permitted under Rule 9(b) when essential information lies uniquely within another party's control, but only if the pleading sets forth the specific facts upon which the belief is reasonably based.").

Where an allegation relates to an expired patent, the "complaint must in the § 292 context provide some objective indication to reasonably infer that the defendant was aware that the patent expired." *Id.*; *see also Clontech Labs., Inc. v. Invitrogen Corp.*, 406 F.3d 1347, 1352 (Fed. Cir. 2005) ("Intent to deceive, while subjective in nature, is established in law by objective criteria. Thus, objective standards control and the fact of misrepresentation coupled with proof that the party making it had knowledge of its falsity is enough to warrant drawing the inference that there was a fraudulent intent.") (quotation marks and citation omitted). Moreover, "[b]ecause the statute requires that the false marker act 'for the purpose of deceiving the public,' a purpose of deceit, rather than simply knowledge that a statement is false, is required." *Pequignot*, 608 F.3d at 1363) (citing 35 U.S.C. § 292(a)). "Thus, mere knowledge that a marking is false is insufficient to prove intent if [the defendant] can prove that it did not consciously desire the result that the public be deceived." *Id.*

ArtSkills argues that RCP failed to plead that ArtSkills falsely marked its products to deceive the public. Mot. Dismiss at 17. According to ArtSkills, RCP's allegations that ArtSkills marked its products with the design patent numbers, while aware that the Trifold Board was not
10

covered by those patents, and falsely marked the products with the patent numbers for the purpose of deceiving the public, are all "conclusory and do not satisfy the requirements for pleading a false marking claim under Rule 9(b)." *Id.*

RCP responds that it adequately pled that Artskills marked the Trifold Display with Design Patents, even though ArtSkills knew that the Design Patents did not cover the Trifold Display. Opp. to Mot. Dismiss at 15. RCP also argues that it pled that ArtSkills marked the Trifold Display, and advertised, marketed, and promoted ArtSkills using those design patents, since at least 2015 (for D739,467), since at least 2016 (for D754,253), and since at least 2014 (for D706,872). *Id.* at 15. RCP also argues that the design patents necessarily were intentionally placed on the Trifold Board—*i.e.*, that the design patents could not have been placed there "by accident or by mere typos"—and that, as a result, "someone at ArtSkills must have been responsible for deciding which patent numbers to include on which products." *Id*. at 16. RCP argues that these allegations are sufficient to infer that ArtSkills intended to deceive when it marked its Trifold Boards with these patent numbers. *Id.* at 18. The Court disagrees.

RCP has failed to plead with particularity that ArtSkills acted with an "intent to deceive the public." *Juniper Networks, Inc.*, 643 F.3d at 1350. "[M]ere knowledge that a marking is false is insufficient to prove intent." *Pequignot*, 608 F.3d at 1363. Here, RCP has not alleged facts sufficient to establish that ArtSkills knew that the marking was false, and, despite that knowledge, ArtSkills chose nevertheless to mark the Trifold Display with the false patent number. Instead, the allegations merely recite a conclusory statement of the intention to deceive element. *See In re BP Lubricants USA Inc.*, 637 F.3d at 1311 (finding that allegation that "BP knew or should have known that the patent expired" was not enough).

Indeed, as further articulated at oral argument, RCP's position is as follows: ArtSkills's design patent, as a matter of law, could not cover what ArtSkills claims it covered and ArtSkills should have known that to be the case. Even assuming that RCP's assertion is true, which the Court must at this stage of the proceedings, *see Iqbal*, 556 U.S. at 678, this assertion falls short of making the critical allegation necessary for this element of its claim: that ArtSkills did this for the purpose of deceiving the public. RCP alleges that "Artskills has falsely affixed [the patents] to the Trifold Display and advertising, marketing, and promotional materials for the Trifold Display, for the purposes of deceiving the public." Am. Answer ¶ 17. But, after the Supreme Court's decisions in *Iqbal* and *Twombly*, that bald assertion, without more, is not enough. *See Iqbal*, 556 U.S. at 678 ("[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.") (quoting *Twombly*, 550 U.S. at 555).

As a matter of law, the Court can only treat that factual assertion as nothing more than conclusory. *See Pequignot*, 608 F.3d at 1363 ("Thus, mere knowledge that a marking is false is insufficient to prove intent if Solo can prove that it did not consciously desire the result that the public be deceived."). It does not provide a sufficient basis for knowing that RCP is entitled to relief under the Rule 8's pleading standard, as articulated in *Twombly* and *Iqbal*, much less the heightened pleading standard of Rule 9. *See Twombly*, 550 U.S. at 557 ("The need at the pleading stage for allegations plausibly suggesting (not merely consistent with) agreement reflects the threshold requirement of Rule 8(a)(2) that the 'plain statement' possess enough heft to 'sho[w] that the pleader is entitled to relief.'") (quoting Fed. R. Civ. P. 8(a)); *see also Juniper Networks, Inc.*, 643 F.3d at 1350 ("A false marking claim requires an intent to deceive the public . . . and sounds in fraud . . . . As such, false marking claims must satisfy the heightened pleading

standard of Fed. R. Civ. P. 9(b), which provides that a party must state with particularity the circumstances constituting fraud or mistake.") (internal quotation marks and citations omitted).

For this reason alone, RCP's counterclaims must be dismissed.

### C. Competitive Injury

Finally, even if RCP's counterclaims do not fail because of a failure to allege an intent to deceive the public, under 35 U.S.C. § 292(b), a plaintiff has standing to bring a false marking claim only if that plaintiff can show a "competitive injury" as a result of the false marking. *See Sukumar*, 785 F.3d at 1399.[3]

ArtSkills argues that RCP has not pled that it suffered a competitive injury due to ArtSkills's alleged false marking. Mot. Dismiss at 19. Instead, RCP "merely states that competitive injury has occurred, without offering any factual details or specific examples to support the claim." Mot. Dismiss at 20. The Court agrees.

Because ArtSkills drew a comparison between its product and RCP's product in the original Complaint, RCP argues that the Court should presume that the two companies are in close competition and therefore RCP would have suffered a competitive injury from ArtSkills's alleged false marking. Opp. to Mot. Dismiss at 18–19 (citing *Ira Green, Inc. v. J.L. Darling Corp.*, No. 3:11-cv-05796-RJB, 2011 WL 6218146, at *4 (W.D. Wash. Dec. 5, 2011) ("While the Ninth Circuit has not yet interpreted 'competitive injury in the patent marking context, as previously interpreted in the context of a Lanham Act claim, the court imposes a general presumption of a competitive injury whenever the defendant and plaintiff are direct competitors

---

[3] As the court in *Sukumar* notes, "[s]atisfaction of this competitive injury requirement . . . does not mean that a party necessarily has standing under § 292(b). The statute also imposes a causation requirement. Standing under § 292(b) is limited to those who have suffered a competitive injury 'as a result of a violation of [section 292(a)].'" *Sukumar*, 785 F.3d at 1400 n.3 (quoting 35 U.S.C. § 292(b)).

and defendant's misrepresentation has a tendency to mislead consumers.") (citing *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820 (9th Cir. 2011)).

RCP also argues that *Sukumar* is distinguishable because it considers whether "an entity that has not entered the relevant market can suffer 'competitive injury.'" *Id.* Here, RCP and ArtSkills already compete in the same market. Compl. ¶ 13 ("RCP followed ArtSkills into the poster board accessory product market that ArtSkills created, and introduced a number of products in the late 2000s designed to compete directly with specific ArtSkills products."). In addition, in *Sukumar*, the Federal Circuit considered an appeal from an order granting summary judgment. *Sukumar*, 785 F.3d at 1405. Here, the Court considers a motion to dismiss, not a motion for summary judgment.

Nevertheless, *Sukumar* is instructive for its explanation of the competitive injury requirement of pleading a false marking claim. *See id.* at 1400–02. The court explained that "§ 292(b) extends standing to sue for a violation of § 292(a) to some potential competitors," but does not extend standing to all potential competitors—rather, it "limits standing to entities that have 'suffered a competitive injury as a result of a violation of [section 292(a)].'" *Id.* at 1402. The court also explained that the plain meaning of a "competitive injury" is a "wrongful economic loss caused by a commercial rival, such as the loss of sales due to unfair competition; a disadvantage in a plaintiff's ability to compete with a defendant, caused by the defendant's unfair competition." *Id.* at 1400 (quoting Black's Law Dictionary (9th ed. 2009)).

RCP nevertheless argues that other district courts have looked to the Lanham Act,[4] and have applied the "general presumption of a competitive injury whenever the defendant and plaintiff are direct competitors and defendant's misrepresentation has a tendency to mislead

---

[4] The Lanham Act, 15 U.S.C. §§ 1051, *et seq.*, regulates trademark regulation and infringement.

14

consumers." *Ira Green, Inc.*, 2011 WL 6218146, at *4; *see also RB Rubber Prod., Inc. v. ECORE Int'l, Inc.*, No. 3:11-cv-319-AC, 2012 WL 4068557, at *8 (D. Or. Sept. 14, 2012) (citing other district court decisions and holding that "competitive injury exists where the parties are in competition in the relevant market and the alleged false marking harms the plaintiff's ability to compete . . . The presumption is, of course, rebuttable[.]"); *Fisher-Price, Inc. v. Kids II, Inc.*, No. 10-cv-00988A(F), 2011 WL 6409665, at *9 n.11 (W.D.N.Y. Dec. 21, 2011) (noting that "the phrase 'competitive injury' has been similarly defined in the context of other market-regulating statutes" and applying it to require that "Defendant must allege sufficient facts to plausibly establish that, as a result of Fisher Price's mismarking of its cradle swings with the '548 patent, Defendant's ability to compete against Plaintiffs in the marke[t] for purchasers of such products was impaired, resulting in tangible economic loss to Defendant").

In any event, RCP's allegations of competitive injury in the counterclaim are conclusory. *See* Am. Answer ¶ 22 ("RCP has suffered, and is likely to continue to suffer, competitive injury because of Artskills' false statements relating to patents."); ¶ 23 ("Artskills' false statements . . . have discouraged and deterred parties from purchasing and/or using products from RCP, and are likely to continue to discourage and deter parties."); ¶¶ 37–38 (same); *see also Twombly*, 550 U.S. at 555 ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . ., a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]") (citations omitted). Rather than support the allegation of competitive injury with factual allegations sufficient to indicate that these injuries actually occurred, RCP has relied on vague assertions. There is no indication of what "competitive injury" RCP has suffered or which parties have been "discouraged and deterred"

from "purchasing and/or using products from RCP." Without more, RCP fails to show that there is a legitimate entitlement to relief. *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

As a result, RCP has failed to allege a competitive injury due to ArtSkills's alleged false marking.

## IV. CONCLUSION

For all of the foregoing reasons, ArtSkills's motion to dismiss RCP's counterclaims therefore is **GRANTED**.

To the extent that the deficiencies identified in this ruling can be addressed, RBC may file a motion for leave to amend its counterclaims by August 24, 2018.

**SO ORDERED** at Bridgeport, Connecticut, this 20th day of July, 2018.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE