| | |
|---|---|
| ARTSKILLS, INC., <br> *Plaintiff*, <br><br> v. <br><br> ROYAL CONSUMER PRODUCTS, LLC, <br> *Defendant*. | No. 3:17-cv-1552 (VAB) |

## RULING AND ORDER ON MOTION FOR LEAVE TO AMEND

On September 14, 2017, Artskills, Inc. ( "Artskills"), filed a Complaint against Royal

Consumer Products, LLC ( "RCP"), claiming that RCP infringed on two of Artskills's patents.

Complaint, dated Sept. 24, 2017 ("Compl."), ECF No. 1. On January 30, 2018, RCP filed an

Amended Answer with counterclaims, denying Artskills's claims and asserting, *inter alia*, that

Artskills had engaged in false marking of its products and that the patents at issue were invalid.

First Amended Answer, dated January 30, 2018 ("First Am. Ans."), ECF No. 34.

On February 13, 2018, Artskills moved to dismiss RCP's counterclaims alleging false

marking. Motion to Dismiss, dated Feb. 13, 2018 ("Mot. to Dismiss"), ECF No. 40. The Court

granted Artskills's motion to dismiss on July 20, 2018, but allowed RCP to file a motion for

leave to amend its counterclaims by August 24, 2018, to the extent that the deficiencies

identified in the ruling could be addressed. Ruling and Order on Mot. to Dismiss, dated July 20,

2018 ("Order"), ECF No. 58.

On August 24, 2018, RCP moved for leave to amend its Answer and Counterclaims.

Motion for Leave to Amend, dated Aug. 24, 2018 ("Mot. to Amend"), ECF No. 65.

For the reasons explained below, RCP's motion is **GRANTED**.

# I.    FACTUAL AND PROCEDURAL BACKGROUND

## A.  Factual Allegations

Artskills, a Pennsylvania corporation, "develops and sells poster boards and poster board accessory products," including a "Trifold Display Board with Header." Compl. ¶ 1. Artskills claims that its Trifold Display Board is "a patented display board of the type used to display information for presentation of any kind, such as presentations in classrooms, science fairs, offices, and household related displays," and that it is "uniquely designed to remain securely closed and undamaged until ready for use." *Id.* ¶ 2.

Artskills alleges that it introduced a number of poster board accessory products in 2005 "in an effort to create a niche industry for poster board accessory products." *Id.* ¶¶ 11–12. Artskills alleges that its "poster board accessory products line was an original and entirely new development in the paper and stationary industry," and that it "now sells poster board accessory products to more than sixty thousand stores across the country, including large retailers such as Wal-Mart, Target, CVS, Walgreens, and Michaels." *Id.* ¶ 12. Artskills alleges that because of its efforts at creating this niche market, "poster board accessory products became a new category within the stationary industry, and Artskills became the leader of that niche industry." *Id.*

Artskills alleges that RCP, a Delaware limited liability corporation headquartered in Norwalk, Connecticut, "is a supplier of office products and related accessories for the consumer and business markets, and sells a variety of products such as printing paper, poster boards, and poster board accessories," including "the Eco Brites Project Board with Header" ("RCP Board"). *Id.* ¶¶ 3–4. Artskills alleges that RCP, which has been in the paper business for many years, began to introduce poster board products in the later 2000's to compete with Artskills products. *Id.* ¶ 13. Artskills claims that "in the past [RCP] has introduced products that were deliberately

designed to duplicate the appearance of Artskills products." *Id.* ¶ 14. Artskills also alleges that "Artskills is RCP's chief competitor in this market, and RCP continues to monitor Artskills's products and competitive activity." *Id.* ¶ 18.

In 2012, Artskills allegedly began to sell its Trifold Display Board, "a multi-panel display board of the general type used [to] display information for presentations of any kind, such as presentations in classrooms, science fairs, offices, and household related displays." *Id.* ¶ 19. Artskills claims that "[a] key advantage of the Artskills Trifold Display Board is that, in contrast to previous designs, the Artskills Board consists of a single sheet of material, including three display panels and a header panel, which is uniquely configured to stay securely closed and intact until used by the consumer." *Id.*

Artskills alleges that, in 2013, RCP "introduced a product called Royal Eco Brites Project Board with Header," which allegedly included "all the unique functional features of the Artskills Trifold Display Board, and, like the Artskills Board, is configured in the same manner to stay securely closed and intact until used by the consumer." *Id.* ¶ 21. Artskills alleged that "RCP copied the appearance, design, and functional features of the Artskills Trifold Display Board in RCP's Project Board." *Id.* ¶ 22. Specifically, Artskills alleged that the RCP Eco Brites Project Board infringed two of its patents: U.S. Patent No. 9,495,886 (the "'886 Patent"), entitled "Multi-Panel Display Device, Blank, and Method of Forming the Device," and U.S. Patent No. 9,076,352 (the "'352 Patent"), entitled "Multi-Panel Display Device, Blank, and Method of Forming the Device." *Id.* ¶¶ 24, 40; *see also* '886 Patent, annexed as Ex. A to Complaint, ECF No. 1-1; '352 Patent, annexed as Ex. B to Complaint, ECF No. 1-2.

### B.  Procedural History

On September 14, 2017, Artskills sued RCP. Compl. RCP filed its Answer on January 11, 2018. Answer, dated Jan. 11, 2018, ECF No. 23. On January 30, 2018, RCP filed an Amended Answer with affirmative defenses and counterclaims. First Am. Ans. RCP denied Artskills's allegations of infringement, arguing that its Eco Brites Project Board does not directly infringe Artskills's patents, either literally or under the doctrine of equivalents, and does not contributorily infringe. *Id.* at 7. RCP also asserted additional affirmative defenses in its First Amended Answer including, *inter alia*, invalidity and prosecution history estoppel. *Id.*

RCP also alleged counterclaims against Artskills of false marking of U.S. Patent No. D739,467, D754,253, and D706,872 (the "'467 Patent," "'253 Patent," and "'872 Patent," respectively). *Id.* at 9–18. RCP alleged that Artskills falsely affixed the '467 Patent, '253 Patent, and '872 Patent to the Trifold Display Board, and to advertising, marketing, and promotional materials for the Trifold Display Board, for the purposes of deceiving the public. *Id.* at 14, 17. RCP further asserted that Artskills's alleged false statements relating to the patents have discouraged and deterred parties from purchasing and/or using products from RCP, and are likely to continue to discourage and deter parties; as a result, RCP claims it has been damaged by Artskills's statements. *Id.* at 12, 15, 17.

Specifically, RCP alleged in its three false marking counterclaims that the Trifold Display Board does not practice the '467 Patent, '253 Patent, and '872 Patent because: (1) the Trifold Display Board "features slots on the free end of the header panel," while the patents claim "a design with slots on the edge that is attached to another piece via a 'preweakened area,'" *id.* at 9–10; 12–13; 15–16; (2) the Trifold Display Board "features a slot with a ridge," while the patents "claim a design featuring a slot that is straight, without any ridge," *id.* at 11, 13,

16; and (3) the Trifold Display Board "features a header panel mounted by adhesive directly on top of a side panel," while the patents "claim a design where the header panel is attached via a [preweakened] area along the side of a side panel, such that the device would lie flat and feature four panels (two side panels, a center panel, and the header panel)," and "[t]here is no claim that would cover a design where the header panel lies directly on top of a side panel before it is removed, as practiced by the Trifold Display," *id.* at 11, 13–14, 16.

On February 13, 2018, Artskills moved to dismiss RCP's counterclaims under Federal Rules of Civil Procedure 12(b)(6) and 9(b). Mot. to Dismiss. RCP opposed the motion. Objection to Mot. to Dismiss, dated Mar. 2, 2018, ECF No. 43.

The Court heard argument on the motion on July 6, 2018. *See* Minute Entry, dated July 6, 2018, ECF No. 56. On July 20, 2018, the Court granted the motion, finding that RCP failed to plead all the elements of a false marking claim under 35 U.S.C. § 292 in accordance with Rule 9(b)'s heightened pleading standard. *See* Order at 16 (citing *In re BP Lubricants USA Inc.,* 637 F.3d 1307, 1309 (Fed. Cir. 2011) ("This court holds that Rule 9(b)'s particularity requirement applies to false marking claims[.]")). The Court, however, allowed RCP to file a motion for leave to amend its counterclaims by August 24, 2018, to the extent that the deficiencies identified in the ruling could be addressed. *Id.*

On August 24, 2018, RCP moved for leave to amend its Answer and counterclaims under Federal Rule of Civil Procedure 15 and the Court's Order. Mot. to Amend. In addition to addressing the deficiencies identified in the Court's Order, RCP seeks leave to include a new counterclaim and affirmative defense alleging inequitable conduct. Proposed Second Amended Answer and Counterclaims, dated Aug. 24, 2018 ("Proposed Second Am. Ans."), annexed as Ex. 1 to Mot. to Amend, ECF No. 64-1, at 9–12. RCP is adding this counterclaim and affirmative

defense now, it says, because of recent discovery involving Stephen P. Dashe, the sole named inventor on the Artskills patents. *See* Mot. to Amend at 4–5 ("Artskills did not produce any documents from the inventor of the Asserted Patents, Stephen Dashe, until June 27, 2018. Additional facts relating to RCP's affirmative defense and counterclaim of inequitable conduct were ascertained during the deposition of Mr. Dashe, which did not take place until July 18, 2018.") (citations omitted).

RCP also seeks leave to amend its existing affirmative defense of invalidity by including additional information that it obtained during discovery—specifically, a list of prior art and claim charts served by RCP on Artskills on May 31, 2018, which RCP claims collectively support its affirmative defense of invalidity. *See* Proposed Second Am. Ans. at 7–8; Mot. to Amend at 4 ("RCP obtained additional information regarding invalidity during discovery and timely produced that information to ArtSkills, including through detailed claim charts submitted in response to an interrogatory relating to RCP's invalidity theories served on May 31, 2018.").

On September 14, 2018, Artskills opposed the motion, arguing that RCP should be precluded from amending its counterclaims because: (1) RCP's proposed amendment does not cure the deficiencies cited in the Court's dismissal order; and (2) RCP's motion vastly exceeds the limited scope of the Court's Order by adding a new counterclaim for inequitable conduct and a new affirmative defense alleging inequitable conduct, and by amending its third affirmative defense so as to incorporate by reference a list of fifty-five patents and thirty-five pages of claim charts. Plaintiff's Memorandum Opposing Mot. to Amend, dated Sep. 14, 2018 ("Pl.'s Mem."), ECF No. 78, at 10.

On September 27, 2018, RCP submitted a reply in support of its motion. Reply, dated Sept. 27, 2018, ECF No. 86.

## II.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 15(a) provides that parties may either amend pleadings once as a matter of course within 21 days after serving the pleading or, after 21 days, move for leave to amend. FED. R. CIV. P. 15(a). The "court should freely give leave when justice so requires." *Id.* If the underlying facts or circumstances relied upon by a party may be a proper subject of relief, that party should be given the opportunity to test its claims on the merits. *Foman v. Davis*, 371 U.S. 178, 182 (1962). In the absence of any apparent or declared reason for denying leave, the leave sought should be "freely given." *Id.*

Thus, while the decision to grant leave to amend is within the discretion of the court, the court must give some "justifying reason" if it denies leave. *Id.* at 182. Reasons for denying leave to amend include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of amendment." *Id.*; *see also Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002) (noting leave to amend may be denied when amendment is "unlikely to be productive," such as when an amendment is "futile" and "could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).") (internal citations omitted); *Park B. Smith, Inc. v. CHF Indus. Inc.*, 811 F. Supp. 2d 766, 779 (S.D.N.Y. 2011) ("While mere delay, absent a showing of bad faith or undue prejudice, is not enough for a district court to deny leave to amend, the longer the period of an unexplained delay, the less will be required of the nonmoving party in terms of a showing of prejudice.") (internal quotation marks omitted).

## III.     DISCUSSION

### A.  False Marking Counterclaim

"An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." *Lucente v. IBM*, 310 F.3d 243, 258 (2d Cir. 2002); *see also Donovam v. Am. Akandia Life Assur. Corp.*, 217 F.R.D. 325 (S.D.N.Y. 2003) ("Where a proposed amended complaint cannot itself survive a motion to dismiss, leave to amend would be futile and may clearly be denied"), *aff'd*, 96 F. App'x 779 (2d Cir. 2004). A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint; to survive such a motion, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Protegrity Corp. v. AJB Software Design, Inc.*, No. 3:13-cv-01484, 2015 WL 461041, at *1 (D. Conn. Feb. 2. 2015) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). While factual allegations are accepted as true, a complaint "must offer more than 'labels and conclusions,' or 'a formalistic recitation of the elements of a cause of action' or 'naked assertion[s]' devoid of 'further factual enhancement.'" *Bentley,* 156 F. Supp.3d at 283 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)).

Artskills claims that RCP's proposed amendments to its counterclaims are futile because they are only superficially different from those that were dismissed, and that RCP therefore has not pleaded the elements of deceptive intent or competitive injury with particularity. Pl.'s Mem. at 18.

RCP claims the amendments are not futile because it has cured the deficiencies outlined in the Court's Order and has successfully pleaded the elements of a false marking claim under 35 U.S. § 292 with particularity in accordance with Federal Rule of Civil Procedure 9(b). Mot. to Amend at 7. The Court agrees.

### 1. Standard for Pleading a False Marking Claim

To plead a false marking claim under 35 U.S.C. § 29, a party must show: (1) an unpatented article; (2) a purpose to deceive the public; and (3) a competitive injury. *See Juniper Networks, Inc. v. Shipley*, 643 F.3d 1346, 1350 (Fed. Cir. 2011) (quoting *Forest Grp. In. v. Bon Tool Co.*, 590 F.3d 1295, 1300 (Fed. Cir. 2009)). The pleadings must comply with the heightened pleading standard outlined in Federal Rule of Civil Procedure 9(b). *See In re BP Lubricants USA Inc.,* 637 F.3d at 1309 (Fed. Cir. 2011) ("This court holds that Rule 9(b)'s particularity requirement applies to false marking claims[.]"); Order at 6.

Under Rule 9(b), the plaintiff must state "the circumstances constituting fraud . . . with particularity." FED. R. CIV. P. 9(b). That is, the plaintiff must: (1) "specify the time, place, speaker, and content of the alleged misrepresentations;" (2) "explain how the misrepresentations were fraudulent;" and (3) "plead those events which give rise to a strong inference that the defendant[] had an intent to defraud, knowledge of the falsity, or a reckless disregarding for the truth." *Caputo v. Pfizer, Inc.*, 267 F.3d 181, 191 (2d Cir. 2001) (citations and internal quotation marks omitted)). "The requisite 'strong inference' of fraud may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Shields v. Citytrust Bancorp, Inc.,* 25 F.3d 1124, 1128 (2d Cir. 1994).

### 2. Futility regarding pleading deceptive intent

Artskills argues that RCP's proposed amendment does not sufficiently plead that Artskills acted with an intent to deceive the public and is therefore futile. Pl.'s Mem. at 17. The Court disagrees.

"Because the statute requires that the false marker act 'for the purpose of deceiving the public,' a purpose of deceit, rather than simply knowledge that a statement is false, is required." *Pequignot*, 608 F.3d at 1363 (citing 35 U.S.C. § 292(a)). "Thus, mere knowledge that a marking is false is insufficient to prove intent if [the defendant] can prove that it did not consciously desire the result that the public be deceived." *Id.*

In this context, Rule 9(b) requires a plaintiff to plead in detail "the specific who, what, when, where and how of the alleged fraud." *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1327 (Fed. Cir. 2009).

RCP contends that it has identified the "who, what, when, where, and how" of the intent to deceive the public. Mot. to Amend at 9–10. The Court agrees.

RCP's counterclaims have alleged sufficient facts from which a court may reasonably infer that Artskills acted with the requisite state of mind that would support the inference that Artskills falsely marked the design patents for the purpose of deceiving the public, by stating the "who, what, where, when, and how" of the intent to deceive the public. *See* Proposed Second Am. Ans. at 12–32, ¶¶ 15, 26 ("who"); ¶¶ 10–20, 5–8, 32, 45–49, 59–63, and 73–78 ("what"); ¶¶ 10–20, 50–52, 64–66, 79–81, 10–19, and 26–35 ("when"); ¶ 5 ("where"); ¶¶ 9–25, 10–20, 26–28, 50–52, 64–66, and 79–81 ("how");[1] *see also* Mot. to Amend at 9–10.

RCP thus has satisfied the particularity pleading standard of Rule 9(b) with regard to deceptive intent, because its factual pleadings now permit a reasonable inference of deceptive intent. *Compare Gaymar Indus. v. Cincinnati Sub-Zero Prods.*, No. 08-CV-299S, 2012 WL 176500, at *7 (W.D.N.Y. Jan. 20, 2012) ("Each allegation concerns a specific document that was

---

[1] The Proposed Second Amended Answer is currently filed under seal as ECF No. 64-1. The Court cites these specific paragraphs, however, to identify to the parties precisely which paragraphs provide the requisite facts needed to plead the counterclaims with the particularity required under Rule 9(b).

withheld from the PTO office. In each allegation, CSZ provides sufficient facts such that the named actors had knowledge of the documents and failed to disclose said documents. It is alleged that many of these documents were in Gaymar's possession, referenced in its own product literature, and relied upon in creating the Medi–Therm® III. In other words, CSZ's factual pleadings permit a reasonable inference of deceptive intent, thus clearing the Rule 9(b) hurdle.") (citation omitted), *with Mikityanskiy v. Podee, Inc.*, No. 10-cv-6410 (PKC), 2011 WL 2038773, at *3 (S.D.N.Y. May 24, 2011) ("The Complaint also fails to allege an intent to deceive that satisfies *BP Lubricants* and *Pequignot*. Plaintiff's allegations of deceptive intent consist of marketing phrases that tout the benefits of Podee products. That Podee tells consumers that its product '[h]elps reduce reflux' or '[h]elps reduce gas build-up and colic' appears to have no bearing on whether the defendant has falsely asserted patent protections with the intention of deceiving the public. Similarly, as held by *BP Lubricants,* the allegation that Podee has prior experience with patent applications is, standing alone, inadequate to allege intentional deception under Rule 9(b).") (citations omitted).

RCP therefore has cured this deficiency of its false marking counterclaim.

### 3. Futility regarding pleading competitive injury

Artskills also alleges that RCP fails to plead competitive injury with particularity under Rule 9(b) in that RCP has relied on vague assertions rather than on the support of factual allegations in its amended counterclaim for competitive injury against Artskills. Pl.'s Mem. at 20. The Court disagrees.

RCP claims that it has satisfied the pleading requirements to demonstrate a reasonable inference that Artskills's false marking conduct has caused RCP competitive injury. Mot. to Amend at 12. The Court agrees.

The Federal Circuit has recognized that the plain meaning of a "competitive injury" is a "wrongful economic loss caused by a commercial rival, such as the loss of sales due to unfair competition; a disadvantage in a plaintiff's ability to compete with a defendant, caused by the defendant's unfair competition," *Sukumar v. Nautilus, Inc.*, 785 F.3d 1396, 1400 (2015) (citing BLACK'S LAW DICTIONARY (9th ed. 2009)); *see also RB Rubber Prod., Inc. v. E CORE Int'l, Inc.*, No. 3:11-cv-319-AC, 2012 WL 4068557, at *8 (D. Or. Sept. 14, 2012) (citing other district court decisions and holding that "competitive injury exists where the parties are in competition in the relevant market and the alleged false marking harms the plaintiff's ability to compete[.]").

The Court previously determined that RCP had not pled competitive injury with particularity and dismissed its counterclaims of false marking against Artskills due to its failure to indicate what competitive injury RCP has suffered or which parties have been discouraged or deterred from purchasing and/or using products from Royal. Order at 15–16.

In the proposed Second Amended Answer, RCP alleges that Artskills and RCP have continued to compete against each other in the market for poster boards and poster board accessory products. Proposed Second Am. Ans. ¶ 38. RCP also alleges that Artskills's false statements relating to the design patents have discouraged and deterred parties from purchasing and/or using products from RCP, and goes on to identify specific customers who have been so discouraged and deterred, causing RCP to suffer reduced sales and lack of growth. *Id.* ¶¶ 39–43.

With these allegations, RCP has satisfied the particularity pleading standard of Rule 9(b) as to competitive injury and therefore has cured this deficiency of its false marking counterclaim. *Cf. Fisher-Price, Inc. v. Kids II, Inc.*, No. 10-cv-988A(F), 2011 WL 6409665, at *10 (W.D.N.Y. Dec. 21, 2011) (false marking counterclaim dismissed where no factual allegation stated how defendant was presently engaged in competition, how plaintiff's alleged mismarking hindered or

diminished defendant's success in such competition, or threatened to proximately force defendant to exit the market); *Greene v. Ab Coaster Holdings, Inc.*, Nos. 2:10-cv-38 & 2:10-cv-234, 2012 WL 4442749, at *13 (S.D. Ohio Sept. 25, 2012) (where a party has not provided factual allegations demonstrating that it was actually deterred from competing in the market by an injury caused by allegedly false patent markings, a claim for competitive injury must fail).

Because RCP has pleaded the elements of a false marking claim under 35 U.S. § 292 with sufficient particularity under Federal Rule of Civil Procedure 9(b), the amendment is not futile and will not be denied on this ground.

### B. New Counterclaim of Inequitable Conduct, New Affirmative Defense of Inequitable Conduct

Generally, RCP's new counterclaim and affirmative defense contend that Artskills' sole named inventor, Stephen P. Dashe, "omitted material information while pursuing the Asserted Patents," specifically the existence of a tri-fold display board made by Elmer's. Reply at 7; *see* Proposed Second Am. Ans. at 9–11.

RCP alleges that Mr. Dashe knew about the Elmer's product as early as December 28, 2011. Proposed Second Am. Ans. at 9, Ex. C. RCP also alleges that Mr. Dashe claims he informed his patent attorneys of the Elmer's product. *Id.* at 11, 33 ¶ 94. It appears that this statement was made during his recent deposition. RCP alleges that his decision to inform them of the Elmer's product indicates that he understood that the Elmer's product was material to patentability. *Id.* RCP alleges this product was material because it was not cumulative with material already cited in the prosecution history of the Patents-in-Suit, and because the patents would not have issued if the U.S. Patent and Trademark Office had been made aware that the Elmer's product included a number of features that were claimed by Artskills and not included in the prior art. *Id.* at 10, 33 ¶ 95. RCP further alleges that Mr. Dashe and his patent attorneys

deliberately omitted this information from their applications for the '352 Patent with intent to deceive the USPTO and to avoid delaying, or preventing, issuance of the '352 Patent. *Id.* at 11–12, 35 ¶ 99.

Artskills argues that, in adding a new counterclaim for inequitable conduct and a new affirmative defense of inequitable conduct, RCP's amendment vastly exceeds the limited scope of the Court's Order dismissing the false marking counterclaim. Pl.'s Mem. at 1. Artskills claims that the Court granted RCP limited permission to file a motion to amend its counterclaims, to the extent that deficiencies identified in its ruling could be addressed, and did not authorize a motion to add new counterclaims or affirmative defenses. *Id.* at 1–3.

Artskills therefore claims that these amendments should be denied as beyond the scope of the Order. Additionally, Artskills asserts that these amendments would be futile because RCP has failed to plead materiality or deceptive intent, the two critical elements of an inequitable conduct claim, with sufficient particularity under Rule 9(b). *Id.* at 25–34. Finally, Artskills also claims a new round of "lengthy discovery" would be required to address the new counterclaim and affirmative defense. *Id.* at 34.

The Court disagrees that RCP should be precluded from including additional counterclaims or affirmative defenses in its pleading solely because the Order did not specifically authorize RCP to do so for two reasons.

First, RCP now properly seeks the Court's leave to amend with respect to these additional counterclaims and affirmative defenses. *See Shah v. Wilco Sys.*, No. 99 Civ. 12054 (AGS), 2002 WL 959557, at *3 (S.D.N.Y. May 8, 2002) (finding plaintiff's proposed amendment, which went beyond the scope of the leave to replead previously granted by the court, did not constitute defiance of the Court's previous order specifying scope of leave to amend because plaintiff,

knowing its amendments went beyond the scope of prior order, properly moved for leave to amend with respect to claims beyond scope of prior order).

Second and relatedly, the witness allegedly giving rise to the proposed counterclaims and affirmative defenses did not come to light until July 18, 2018, after the July 6 oral argument, but before the Court's July 20 ruling. The Court's July 20 ruling then cannot be construed as limiting consideration of these issues, issues which were not properly before it.

Thus, rather than exclude these proposed claims because they are beyond the scope of the Court's order, *see Palm Beach Strategic Income, LP v. Salzman*, 457 F. App'x 40, 43 (2d Cir. 2012) ("District courts in this Circuit have routinely dismissed claims in amended complaints where the court granted leave to amend for a limited purpose and the plaintiff filed an amended complaint exceeding the scope of the permission granted."), the Court instead will consider whether these amendments should be permitted under Rule 15 and *Foman*—i.e., whether permitting the amendments would be futile or would result in undue prejudice. *See Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001) ("Leave to file an amended complaint 'shall be freely given when justice so requires,' FED. R. CIV. P. 15(a), and should not be denied unless there is evidence of undue delay, bad faith, undue prejudice to the non-movant, or futility.") (citing *Foman*, 371 U.S. at 182).

### 1. Futility

#### a. Standard for Pleading an Inequitable Conduct Claim

"Inequitable conduct is an equitable defense to patent infringement that, if proved, bars enforcement of a patent." *Therasense, Inc. v. Becton, Dickinson and Co.*, 649 F.3d 1276, 1285 (Fed. Cir. 2011). The defense "evolved from a trio of Supreme Court cases that applied the doctrine of unclean hands to dismiss patent cases involving egregious misconduct: *Keystone*

*Driller Co. v. Gen. Excavator Co.*, 290 U.S. 240 (1933), *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238 (194), and *Precision Instrument Mfg.f. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806 (1945)." *Id.* (parallel citations and subsequent history omitted). "As the inequitable conduct doctrine evolved from these unclean hands cases, it came to embrace a broader scope of misconduct, including not only egregious affirmative acts of misconduct intended to deceive both the [Patent and Trademark Office ("PTO")] and the courts but also the mere nondisclosure of information to the PTO." *Id.* at 1287. "Inequitable conduct also diverged from the doctrine of unclean hands by adopting a different and more potent remedy—unenforceability of the entire patent rather than mere dismissal of the instant suit." *Id.*

While the denial of a motion to amend a pleading "is a procedural matter governed by the law of the regional circuit . . . . [w]hether inequitable conduct has been pleaded with particularity under Rule 9(b) is a question governed by Federal Circuit law," *Exergen*, 575 F.3d at 1318 (citing *Cent. Admixture Pharma. Servs., Inc. v. Advanced Cardiac Sols., P.C.*, 482 F.3d 1347, 1356–57 (Fed. Cir. 2007)), as it "pertains to or is unique to patent law," *Cent. Admixture*, 482 F.3d at 1356.

"[T]o plead the 'circumstances' of inequitable conduct with the requisite 'particularity' under Rule 9(b), the pleading must identify the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO." *Exergen*, 575 F.3d at 1328. "Moreover, although 'knowledge' and 'intent' may be averred generally, a pleading of inequitable conduct under Rule 9(b) must include sufficient allegations of underlying facts from which a court may reasonably infer that a specific individual (1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the PTO." *Id.* at 1328–29

(footnote omitted). The same standard applies to both a counterclaim and an affirmative defense of inequitable conduct.

### b. Futility as to Materiality

Artskills argues that RCP has not adequately pleaded materiality because its allegations "are based on the faulty premise that the Elmer header panel was material to patentability." Pl.'s Mem. at 26. Further, Artskills argues that RCP "has not identified any specific claims, or limitations of claims, in the Patents-in-Suit to which the Elmer board is material." *Id.* Artskills claims that RCP improperly "relies on statements by the patent examiner about the overall content of the prior art to reach an improper and unfounded conclusion that the Elmer header was material." *Id.*

Artskills then proceeds to offer several pages of argument, with extensive citations to additional exhibits not contained in the Proposed Second Amended Answer or the Complaint, as to why RCP has failed to plead materiality adequately. *See id.* at 27–31. These include statements such as: "RCP falsely characterizes the file histories as saying the examiner was unaware of any prior art that includes a slotted header. The file histories plainly show that the examiner never made such a statement, which would have been false in view of the examiner's own discussion of the Schirer patents during prosecution of the '352 patents." *Id.* at 31.

RCP argues that Artskills's argument as to materiality are more "of a factual dispute appropriate for the ultimate finder of fact" and that "Artskills' need to attach additional materials . . . exemplifies this." Reply at 7–8. The Court agrees.

The proposed amendment contains sufficient allegations of underlying facts from which the Court may reasonably infer materiality. The amendment asserts that the Elmer's product was material because it was not cumulative with materials already cited in the prosecution history of

the patent. Proposed Second Am. Ans. at 33–34. Moreover, the amendment identifies that it believes the Elmer's product is material to those claims of the patents that discuss a header panel comprising first and second slots. *Id.*. at 10, 33–34.

Artskills, on the other hand, insists that the Elmer's product was cumulative and proceeds to explain why it believes this is the case through citations to exhibits included with its opposition. Pl.'s Mem. at 27–31.

At this stage, the pleadings sufficiently allege that the Elmer's product was material. The Court ultimately may conclude that it was not material, but, at this stage, the proposed amendment is not futile in this regard. *See CBS, Inc. v. Ahern*, 108 F.R.D. 14, 19 (S.D.N.Y. 1985) ("A Rule 12(b)(6) motion is to be decided solely on the pleadings construed favorably to the pleader, and it would therefore be improper to dismiss a pleading based upon the opposing party's assertion of facts that are beyond the scope of that pleading. It follows, then, that it would be improper to deny leave to amend based upon such an evidentiary proffer.") (collecting cases); *Fischkoff v. Iovance Biotherapeutics, Inc.*, No. 17-cv-5041 (AT)(GWG), 2018 WL 5078354, at *1 (S.D.N.Y. Oct. 17, 2018) ("Because the resolution of Iovance's motion turns on whether its proposed counterclaims state a claim for relief, we 'accept[ ] all factual allegations [in its proposed counterclaims] as true and draw[ ] all reasonable inferences in favor of the [counterclaimant].' We also consider all 'documents attached to the [proposed amended answer] as exhibits, and documents incorporated by reference in the [proposed amended answer].' We thus ignore the lengthy counter-recitation of facts contained in Fischkoff's opposition to the motion to amend.") (internal citations omitted).

### c. Futility as to Deceptive Intent

Artskills also argues that deceptive intent must be pleaded such that it can reasonably be inferred that material information was not disclosed by Artskills or its attorney had a specific intent to deceive the PTO. Pl.'s Mem. at 32–33. Because Artskills claims the Elmer's product was cumulative and not material, it claims that the most reasonable inference is that it was not disclosed because its employees did not believe it was material, and that, where more than one reasonable inference exists, deceptive intent cannot be found. *Id.* The Court disagrees.

At this stage of the case, the Court need not adjudicate the issue of materiality. As explained above, that is an issue of fact that has been sufficiently pleaded by RCP in the Second Amended Answer. The Court therefore cannot conclude that the inference that Artskills prefers is, in fact, the most reasonable one at this time; that is, instead, a question reserved for the ultimate fact-finder's consideration of evidence. *See Therasense*, 649 F.3d at 1290–91 (explaining that, in evaluating evidence of deceptive intent that suggests multiple reasonable inferences, district courts must ultimately determine whether intent to deceive is the single most reasonable inference able to be drawn from the evidence).

RCP has alleged that Mr. Dashe knew of the Elmer's product and told the patent attorney of its existence, and that the Elmer's product was not included in the patent application, even though it contained features relating to the patents whose validity is currently challenged. *Id.* at 33–35. RCP alleges this was done with intent to deceive the PTO and expedite the applications, on information and belief. *Id.* at 35. These allegations may not be enough to ultimately prove deceptive intent, but they are sufficient to allow for a reasonable inference of deceptive intent at the pleading stage. *See, e.g.*, *Gaymar Indus.*, 2012 WL 176500, at *7 ("In other words, CSZ's

factual pleadings permit a reasonable inference of deceptive intent, thus clearing the Rule 9(b) hurdle.").

Because RCP has pleaded the elements of inequitable conduct with sufficient particularity under Federal Rule of Civil Procedure 9(b), the amendment is not futile.

### 2. Undue Prejudice

Artskills also argues that allowing RCP to add an inequitable conduct counterclaim and defense "would multiply the complexity of claim construction and discovery, as the case ballooned from two patents to five," and that "claim construction briefing, which is now completed, would have to be repeated and expanded to include three additional patents." Pl.'s Mem. at 34.

RCP responds, however, that the new counterclaim and defense would not result in undue prejudice to Artskills, noting that discovery has not closed, expert disclosures are not yet due, and no trial date has been set yet; thus, there still remains ample time for Artskills to conduct its own investigation regarding inequitable conduct. Mot. to Amend at 5–6.

To evaluate undue prejudice, courts analyze "whether the assertion of the new claim would: (1) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction." *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993).

With respect to the potential for prejudice because of new discovery burdens, Artskills merely asserts that the amendment would expand discovery significantly. However, "the adverse party's burden of undertaking discovery, standing alone, does not suffice to warrant denial of a motion to amend a pleading." *U.S. ex rel. Mar. Admin. V. Cont'l Ill. Nat'l Bank and Tr. Co. of*

*Chi.*, 889 F.2d 1248, 1255 (2d Cir. 1989) (citing *S.S. Silberblatt, Inc. v. East Harlem Pilot Block–Bldg. 1 Hous. Dev. Fund Co.*, 608 F.2d 28, 43 (2d Cir. 1979)). Moreover, Artskills has failed to identify specifically the new discovery that would be so burdensome as to be unduly prejudicial.

With respect to the need for new claim construction briefing, Artskills has failed to explain why the addition of the inequitable conduct counterclaim and defense would require it to do more than supplementing the current claim construction briefing. Nor has Artskills explained why this Court could not sufficiently oversee any additional claim construction briefing to ensure that it is conducted in a manner that is proportional to the needs of the case and in a manner that secures the "just, speedy, and inexpensive determination" of the parties' claims and counterclaims—particularly since discovery has not closed and no claim construction hearing has yet been held. Fed. R. Civ. P. 1.

The timing, therefore, does not on its own create a likelihood that Artskills will be unduly prejudiced by these amendments. *See Agerbrink v. Model Service LLC*, 155 F. Supp. 3d 448, 454–55 (S.D.N.Y. 2016) (collecting cases suggesting that undue prejudice may arise if motion to amend brought after discovery has closed or just prior to trial); *CA, Inc. v. AppDynamics, Inc.*, No. 13-CV-2111, 2014 WL 2805115, at *4 (E.D.N.Y June 20, 2014) (denying leave to amend in patent case where discovery was close to ending, claim construction hearing had already been held, and amendment would change the entire nature and scope of the action).

The burden of granting this amendment therefore is not so substantial that it would be unduly prejudicial under *Foman*. The Court therefore will not deny the amendment because of undue prejudice.

### C. Amended Affirmative Defense of Invalidity

RCP also seeks to amend its existing affirmative defense of invalidity by incorporating a list of fifty-five patents and thirty-five pages of claim charts by reference. *See* Proposed Second Am. Ans. at 7–8, Exs. A & B. Artskills's opposition devotes three sentences to the invalidity amendment, arguing that it was unauthorized and should therefore be denied. Pl.'s Mem. at 34.

As discussed above, however, RCP should not be precluded from making an amendment simply because the Order granting leaving to amend did not specifically authorize it to do so. The Court therefore will not deny this amendment.

## IV. CONCLUSION

For the reasons stated above, RCP's motion for leave to amend its answer and counterclaims therefore is **GRANTED.**

RCP shall file its Second Amended Answer on the docket by December 14, 2018.

**SO ORDERED** at Bridgeport, Connecticut, this 3rd day of December, 2018.

  /s/ Victor A. Bolden
Victor A. Bolden
United States District Judge