# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

ARTSKILLS, INC.,
    *Plaintiff*,

    v.

ROYAL CONSUMER PRODUCTS, LLC,
    *Defendant*.

No. 3:17-cv-1552 (VAB)

## RULING ON CLAIM CONSTRUCTION

Artskills, Inc. ("Artskills" or "Plaintiff") has sued Royal Consumer Products, LLC

("Defendant" or "RCP"), alleging that RCP was infringing two of Artskills's patents: U.S. Patent

Nos. 9,076,352 ("the '352 Patent") and 9,495,886 ("the '886 Patent") (collectively, "the asserted

Utility Patents"). *See* Complaint, dated Sept. 14, 2017 ("Compl."), ECF No. 1.

RCP has brought counterclaims against Artskills, alleging that Artskills falsely marked its

products with three patents: U.S. Patent Nos. D739,467 ("the D467 patent"), D754,253 ("the

D253 patent"), and D706,872 ("the D872 patent") (collectively, "the asserted Design Patents.").

*See* Second Amended Answer, dated Dec. 14, 2018 ("Am. Ans."), ECF No. 100.

Following the submission of initial, supplemental, and responsive claim construction

briefs by Artskills and RCP, the Court held a claim construction hearing under *Markman v.

Westview Instruments, Inc.*, 517 U.S. 370 (1996), to determine the construction of the disputed

terms in the patent claims in question. Minute Entry, filed Apr. 9, 2019, ECF No. 121.

For the reasons explained below, the Court construes the disputed terms in the asserted

Utility Patents as follows:

| Disputed Term | Court's construction | |
| --- | --- | --- |
| | **'352 Patent** | **'886 Patent** |
| "Pre-weakened line" | A line in the sheet of material that has been weakened. | A line in the blank that has been weakened. |
| "Folded state" | [*in Claim 6 only*]: The state in which the first side panel is folded over the center panel about the first line in the sheet of material that has been weakened, and the second side panel is folded over the center panel about the second line in the sheet of material that has been weakened. | [*in Claim 8 only*]: The state in which the first side panel is folded over the center panel about the first line in the blank that has been weakened, and the second side panel is folded over the center panel about the second line in the blank that has been weakened. |
| "Fold line" | A line along which the sheet of material may be folded. | n/a |
| "Perforation line" | A line along which a portion of the sheet of material may be detached or separated. | n/a |

For the reasons explained below, the Court construes the disputed terms of the asserted

Design Patents as follows:

| Disputed Term | Court's construction |
| --- | --- |
| "Blank" (D872 Patent) | A single piece of material to be assembled into a tri-fold display. |
| "Blank" (D467 & D253 Patents) | A single piece of material to be assembled into a multi-panel display. |
| "I claim the ornamental design for a tri-fold display blank, as shown and described." (D872 Patent) | The ornamental aspects of the design of a single piece of material to be assembled into a tri-fold display, as shown in Figures 1–3, specifically the configuration of linear segments of equal length, the shape and positioning of slots in the header panel, the size/shape of the rounded panel corners, and the width/length/shape of the header and adhesive panels. |
| "I claim the ornamental design for a multi-panel display blank, as shown and described." (D467 Patent) | The ornamental aspects of the design of a single piece of material to be assembled into a multi-panel display, as shown in Figures 1–5, specifically the configuration of linear segments of equal length, the shape and positioning of slots in the header panel, the size/shape of the rounded panel corners, and the width/length/shape of the header and adhesive panels. |
| "I claim the ornamental design for a multi-panel display blank, as shown and described." (D253 Patent) | The ornamental aspects of the design of a single piece of material to be assembled into a multi-panel display, as shown in Figures 1–2, specifically the configuration of linear segments of equal length, the shape and positioning of slots in the header panel, the size/shape of the rounded panel corners, and the width/length/shape of the header and adhesive panels. |

## I.  FACTUAL AND PROCEDURAL BACKGROUND

### A.  The Asserted Utility Patents

On February 5, 2015, Artskills filed the '352 Patent, entitled "Multi-Panel Display Device, Blank, and Method of Forming the Device," as Application No. 14/614,742. *See* '352 Patent, annexed as Ex. B to Complaint, ECF No. 1-2. On July 7, 2015, the United States Patent & Trademark Office ("USPTO") issued the '352 Patent. *Id.*

Artskills accuses RCP—through its sale of the RCP Eco Brites Project Board with Header—of infringing independent claim 1, dependent claims 2 through 7, independent claim 8, dependent claims 9 through 11, independent claim 12, and dependent claims 13 through 19 of the '352 Patent. Compl. ¶ 51. Those claims read as follows, with the disputed terms or phrases noted in bold typeface:

> 1. A multi-panel display device comprising:
> a sheet of material comprising:
> > a center panel having a first edge, a second edge, a top edge, a bottom edge, a height measured between the top and bottom edges of the center panel, and a width $W_C$ measured between the first and second edges of the center panel;
> > a first side panel having a first free edge, a second edge, a top edge, a bottom edge, and a height measured between the top and bottom edges of the first side panel, the second edge of the first side panel attached to the first edge of the center panel along a **first pre-weakened line**;
> > a second side panel having a first edge, a second edge, a top edge, a bottom edge, and a height measured between the top and bottom edges of the second side panel, the first edge of the second side panel attached to the second edge of the center panel along a **second pre-weakened line**; and
> > a header panel having a first edge, a second edge, a top edge, a bottom edge, a height measured between the top and bottom edges of the head panel, and a width $W_H$ measured between the first and second edges of the header panel, the first edge of the header panel detachably coupled to the second edge of the second side panel along a **third pre-weakened line**, the header panel comprising a first slot and a second slot, each of the first and second slots extending from one of the first and second

edges of the header panel towards the other of the first and second edges of the header panel, the first and second slots having a length $L_S$ measured from the one of the first and second edges of the header panel to a terminal end of the slots that is less than the width $W_H$ of the header panel, the first and second slots spaced apart by a distance D that is greater than the width $W_C$ of the center panel; the heights of the center panel, the first side panel, the second side panel, and the header panel being substantially the same so that the top and bottom edges of the center panel, the first side panel, the second side panel, and the header panel are aligned;

the sheet of material alterable between:

(1) **a folded state** in which:

(A) the first side panel is folded over the center panel about the **first pre-weakened line**; and

(B) the second side panel is folded over the center panel about the **second pre-weakened line**; and

(2) a display state in which:

(A) the header panel is broken away from the second side panel along the **third pre-weakened line**;

(B) the first and second side panels extend in a direction away from a front surface of the center panel; and

(C) the header panel is mounted to the first and second side panels so as to extend upward from the top edges of the first and second side panels.

2. The multi-panel display device of claim 1 wherein $L_s$ is between 1.5 inches and 3 inches.

3. The multi-panel display device of claim 1 wherein the **first and second pre-weakened lines** are **fold lines** and wherein the **third pre-weakened line** is a **perforation line**.

4. The multi-panel display device of claim 1 wherein the first side panel has a width $W_1$ measured between the first free edge and the second edge of the first side panel, the second side panel has a width $W_2$ measured between the first and second edges of the second side panel, and wherein $W_1$ is substantially equal to $W_2$.

5. The multi-panel display device of claim 4 wherein $W_2 + W_H \geq W_C - W_1$, $W_1 > W_H$, and $W_2 > W_H$.

6. The multi-panel display device of claim 1 wherein in **the folded state** the header panel at least partially overlies a rear surface of the first side panel.

7. The multi-panel display device of claim 1 wherein in the display state the first and second side panels extend outwardly from the center panel in a manner oblique to the front surface of the center panel.

8. A multi-panel display device comprising:
a sheet of material comprising:

   a center panel having a first edge, a second edge, and a width $W_C$ measured between the first and second edges;

   a first side panel having a first free edge and a second edge, the second edge of the first side panel attached to the first edge of the center panel along a **first pre-weakened line**;

   a second side panel having a first edge and a second edge, the first edge of the second side panel attached to the second edge of the center panel along a **second pre-weakened line**; and

   a header panel having a first edge, a second edge, and a width $W_H$ measured between the first and second edges, the first edge of the header panel detachably coupled to the second edge of the second side panel along a **third pre-weakened line**;

   wherein each of the center panel, the first side panel, the second side panel, and the header panel have the same height;

the sheet of material alterable between:

  (1) **a folded state** in which:

    (A) the first side panel is folded over the center panel about the **first pre-weakened line**; and

    (B) the second side panel is folded over the center panel about the **second pre-weakened line**; and

  (2) a display state in which:

    (A) the header panel is broken away from the second side panel along **third pre-weakened line**;

    (B) the first and second side panels extend in a direction away from a front surface of the center panel; and

    (C) the header panel is mounted to the first and second side panels so as to extend upward from top edges of the first and second side panels.

9. The multi-panel display device of claim 8 wherein the header panel comprises a first slot and a second slot, each of the first and second slots extending from one of the first and second edges of the header panel towards the other of the first and second edges of the header panel, the first and second slots having a length Ls measured from the one of the first and second edges of the header panel to a terminal end of the slots that is less than the width $W_H$ of the header panel, the first and second slots spaced apart by a distance D that is greater than the width $W_C$ of the center panel, and wherein $L_S$ is between 1.5 inches and 3 inches.

10. The multi-panel display device of claim 8 wherein the **first and second pre-weakened lines** are **fold lines** and wherein the **third pre-weakened line** is a **perforation line**.

11. The multi-panel display device of claim 8 wherein the first side panel has a width W, measured between the first free edge and the second edge of the first side panel, the second side panel has a width $W_2$ measured between the first and second edges of the second side panel, and wherein $W_1$ is substantially equal to $W_2$, $W_1 > W_H$, $W_2 > W_H$, and $W_2 + W_H \geq W_C - W_1$.

12. A blank for a multi-panel display device comprising:
a center panel having a first edge and a second edge;
a first side panel having a first free edge and a second edge, the second edge of the first side panel attached to the first edge of the center panel along a **first pre-weakened line**;
a second side panel having a first edge and a second edge, the first edge of the second side panel attached to the second edge of the center panel along a **second pre-weakened line**; and
a header panel having a first edge and a second edge, the first edge of the header panel detachably coupled to the second edge of the second side panel along a **third pre-weakened line**, the header panel comprising a first slot and a second slot, each of the first and second slots extending from one of the first and second edges of the header panel towards the other of the first and second edges of the header panel;
wherein the first side panel has a width $W_1$ measured between the first free edge and the second edge of the first side panel, the second side panel has a width $W_2$ measured between the first and second edges of the second side panel, the center panel has a width $W_C$ measured between the first and second edges of the center panel, and the header panel has a width $W_H$ measured between the first and second edges of the header panel, and wherein $W_2 + W_H \geq W_C - W_1$; and
wherein $W_1$, is substantially equal to $W_2$, $W_1 > W_H$, and $W_2 > W_H$.

13. The blank of claim 12 wherein the first and second slots have a length $L_S$ measured from the one of the first and second edges of the header panel to a terminal end of the first and second slots that is located between the first and second edges of the header panel, the length $L_S$ being less than the width $W_H$ of the header panel.

14. The blank of claim 13 wherein $L_S$ is between 1.5 inches and 3 inches.

15. The blank of claim 12 wherein the first and second slots are spaced apart by a distance D that is greater than the width $W_C$ of the center panel.

16. The blank of claim 12 wherein the **first and second pre-weakened lines** are **fold lines** and wherein the **third pre-weakened line** is a **perforation line**, the header panel being separable from the second side panel along the **third pre-weakened line**.

17. The blank of claim 12 wherein when the blank is in **a folded state** the first side panel is folded over the center panel about the **first pre-weakened line** and the second side panel is folded over the center panel about the **second pre-weakened line** so that the header panel overlies a rear surface of the first side panel.

18. The blank of claim 12 wherein the first side panel, the second side panel, the center panel, and the header panel collectively form an integral sheet of material.

'352 Patent cols. 13–16.

On June 30, 2015, Artskills filed the '886 Patent, entitled "Multi-Panel Display Device, Blank, and Method of Forming the Device," as Application No. 14/754,802. *See* '886 Patent, annexed as Ex. A to Complaint, ECF No. 1-1. On November 15, 2016, the USPTO issued the '886 Patent. *Id.*

Artskills accuses RCP—through its sale of the RCP Eco Brites Project Board with Header—of infringing independent claim 1, dependent claims 2 through 9, independent claim 10, and dependent claims 11 through 14 of the '886 Patent. Compl. ¶ 34. Those claims read as follows, with the disputed terms or phrases to be construed by the Court noted in bold typeface:

1. A blank for a multi-panel display device comprising:
a center panel having a first edge, a second edge, a top edge, and a bottom edge, a first height measured between the top and bottom edges of the center panel;
a first side panel having a first free edge, a second edge, a top edge, and a bottom edge, a second height measured between the top and bottom edges of the first side panel, the second edge of the first side panel attached to the first edge of the center panel along a **first pre-weakened line**;

a second side panel having a first edge, a second edge, a top edge, and a bottom edge, a third height measured between the top and bottom edges of the second side panel, the first edge of the second side panel attached to the second edge of the center panel along a **second pre-weakened line**; and

a header panel having a first edge and a second edge and first and second slots extending from one of the first and second edges of the header panel towards the other of the first and second edges of the header panel, the first edge of the header panel detachably coupled to the second edge of the second side panel along a **third pre-weakened line**; and

wherein each of the first, second, and third heights is the same.

2. The blank of claim 1 wherein the header panel has a fourth height measured between a top edge and a bottom edge thereof, the fourth height being the same as the first, second, and third heights.

3. The blank of claim 1 wherein each of the first, second, and third heights is between 30-40 inches.

4. The blank of claim 1 wherein the top edges of the center panel, the first side panel, and the second side panel lie on a first plane and wherein the bottom edges of the center panel, the first side panel, and the second side panel lie on a second plane, the first and second planes being parallel.

5. The blank of claim 1 further comprising a first width measured between the first and second edges of the center panel, a second width measured between the first free edge and the second edge of the first side panel, and a third width so measured between the first and second edges of the second side panel, the second width being substantially equal to the third width.

6. The blank of claim 5 wherein a ratio of the first width of the center panel to each of the second width of the first side panel and the third width of the second side panel is approximately 2:1.

7. The blank of claim 1 wherein in **a folded state** the first side panel is folded over the center panel about the **first pre-weakened line**, the second side panel is folded over the center panel about the **second pre-weakened line**, and the first free edge of the first side panel is adjacent to the second edge of the second side panel.

8. The blank of claim 7 wherein in **the folded state** the first and second side panels do not overlap one another.

9. The blank of claim 1 wherein the first side panel, the second side panel, the center panel, and the header panel collectively form an integral sheet of material.

10. A blank for a multi-panel display device comprising:
a center panel having a first edge and a second edge, a first width measured between the first and second edges of the center panel;
a first side panel having a first free edge and a second edge, the second edge of the first side panel attached to the first edge of the center panel along a **first pre-weakened line**, a second width measured between the first free edge and the second edge of the first side panel;
a second side panel having a first edge and a second edge, the first edge of the second side panel attached to the second edge of the center panel along a **second pre-weakened line**, a third width measured between the first and second edges of the second side panel;
a header panel having a first edge and a second edge and first and second slots extending from one of the first and second edges of the header panel towards the other of the first and second edges of the header panel, the first edge of the header panel detachably coupled to the second edge of the second side panel along a **third pre-weakened line**; and
wherein a ratio of the first width to the second width is approximately 2:1.

11. The blank of claim 10 wherein the second and third widths are substantially the same.

12. The blank of claim 10 wherein top surfaces of the center panel, the first side panel, the second side panel, and the header panel are aligned along a first axis and wherein bottom surfaces of the center panel, the first side panel, the second side panel, and the header panel are aligned along a second axis, the first axis being parallel to the second axis.

13. The blank of claim 10 wherein each of the center panel, the first side panel, the second side panel, and the header panel have the same height.

14. The blank of claim 10 wherein the center panel has a height measured between top and bottom surfaces thereof, and wherein the first and second side panels are attached to the first and second edges of the center panel, respectively, along an entirety of the height of the center panel.

'886 Patent cols. 14–16.

Both patents list Stephen P. Dashe as their inventor and Artskills as the assignee. *See* '352 Patent at 1, '886 Patent at 1.

### B. The Asserted Design Patents

RCP alleges that the "Artskills Trifold Display Board with Header" (hereafter, the "Artskills Trifold Display") currently designed and sold by Artskills in the United States in at least three sizes, was marked with six patents, including the three asserted design patents, until July 18, 2018. Am. Ans. at 13 ¶ 6. RCP alleges, on information and belief, that the Artskills Trifold Display is still sold marked with these patents. *Id.* at 13 ¶ 7.

RCP alleges that the Artskills Trifold Display "does not practice at least the invention(s) disclosed in" the asserted Design Patents, D872, D467, and D253, because it "does not contain all claimed features and an ordinary observer could distinguish [it] from the claimed designs" of the asserted Design Patents. *Id.* at 13 ¶ 8.

On February 17, 2012, Artskills filed the D872 patent, entitled "Tri-Fold Display Blank", as Application No. 29/413,658. *See* D872 Patent, annexed as Ex. P to Pfeiffer Decl., ECF No. 114-2. On June 10, 2014, the USPTO issued the D872 Patent. *Id.* The D872 patent has a single claim: "the ornamental design for a tri-fold display blank," as shown and described in eleven figures representing different views of the tri-fold display blank in two present embodiments. *Id.* The disputed claim terms are "blank" and "ornamental design for a tri-fold display blank."

On March 27, 2013, Artskills filed the D467 patent, entitled "Multi-Panel Display Blank", as Application No. 29/451,100. *See* D467 Patent, annexed as Ex. Q to Pfeiffer Decl., ECF No. 114-3. On September 22, 2015, the USPTO issued the D467 Patent. *Id.* The D467 patent has a single claim: "the ornamental design for a multi-panel display blank," as shown and

described in thirteen figures representing different views of a multi-panel display blank in three present embodiments. *Id.* The disputed claim terms are "blank" and "the ornamental design for a multi-panel display blank."

On June 9, 2014, Artskills filed the D253 patent, entitled "Multi-Panel Display Blank", as Application No. 29/493,393. *See* D253 Patent, annexed as Ex. R to Pfeiffer Decl., ECF No. 114-4. On April 19, 2016, the USPTO issued the D253 Patent. *Id.* The D26 patent has a single claim: "the ornamental design for a multi-panel display blank," as shown and described in ten figures representing different views of the multi-panel display blank in one present embodiment. *Id.* The disputed claim terms are "blank" and "the ornamental design for a multi-panel display blank."

### C.  Procedural History

On September 14, 2017, Artskills sued RCP. Compl.

On January 11, 2018, RCP filed its Answer. Answer, dated Jan. 11, 2018, ECF No. 23.

On January 30, 2018, RCP filed an Amended Answer with affirmative defenses and counterclaims. First Am. Ans. RCP denied Artskills's allegations of infringement, arguing that its Eco Brites Project Board does not directly infringe Artskills's patents, either literally or under the doctrine of equivalents, and does not contributorily infringe. *Id.* at 7. RCP also asserted additional affirmative defenses in its First Amended Answer including, *inter alia*, invalidity and prosecution history estoppel. *Id.*

RCP also asserted counterclaims against Artskills of false marking, alleging that Artskills falsely affixed the D872, D467, and D253 Patents to the Trifold Display Board, and to related advertising, marketing, and promotional materials, for the purposes of deceiving the public. *Id.* at 9–18. RCP further asserted that Artskills's alleged false statements relating to the patents have discouraged and deterred parties from purchasing and/or using products from RCP, and are likely

to continue to discourage and deter parties; as a result, RCP claimed it has been damaged by Artskills's statements. *Id.* at 12, 15, 17.

On February 13, 2018, Artskills moved to dismiss RCP's counterclaims under Federal Rules of Civil Procedure 12(b)(6) and 9(b). Motion to Dismiss Counterclaims, dated Feb. 13, 2018 ("Mot. to Dismiss"), ECF No. 40. RCP opposed the motion. Objection to Mot. to Dismiss, dated Mar. 2, 2018, ECF No. 43.

On July 6, 2018, the Court heard argument on the motion to dismiss. *See* Minute Entry, dated July 6, 2018, ECF No. 56.

On July 20, 2018, the Court granted the motion to dismiss, finding that RCP failed to plead all the elements of a false marking claim under 35 U.S.C. § 292, in accordance with Rule 9(b)'s heightened pleading standard. *See* Ruling and Order on Mot. to Dismiss, dated Jul. 20, 2018, ECF No. 58, at 16 (citing *In re BP Lubricants USA Inc.,* 637 F.3d 1307, 1309 (Fed. Cir. 2011) ("This court holds that Rule 9(b)'s particularity requirement applies to false marking claims[.]")). The Court, however, allowed RCP to file a motion for leave to amend its counterclaims by August 24, 2018, to the extent that the deficiencies identified in the ruling could be addressed. *Id.*

On August 3, 2018, the parties jointly filed a chart listing the disputed claim terms, and the parties' proposed constructions of them, in the '352 and '886 Patents. Joint Disputed Claim Terms Chart, filed Aug. 3, 2018 ("Utility Patents Chart"), ECF No. 61.

On August 24, 2018, the parties filed their opening claim construction briefs with respect to the disputed claim terms in the asserted Utility Patents. Plaintiff's Opening Claim Construction Brief, dated Aug. 24, 2018 ("Pl.'s Br."), ECF No. 66; Defendant's Opening Claim Construction Brief, dated Aug. 24, 2018 ("Def.'s Br."), ECF No. 71.

That same day, RCP moved for leave to amend its Answer and counterclaims under Federal Rule of Civil Procedure 15 and the Court's July 20, 2018 Ruling and Order. Motion to Amend Answer, dated Aug. 24, 2018 ("Mot. to Amend"), ECF No. 65. In addition to addressing the deficiencies identified in the Court's Ruling and Order, RCP sought leave to include a new counterclaim and affirmative defense alleging inequitable conduct. Proposed Second Amended Answer and Counterclaims, dated Aug. 24, 2018 ("Proposed Second Am. Ans."), annexed as Ex. 1 to Mot. to Amend, ECF No. 64-1, at 9–12. RCP also sought leave to amend its existing affirmative defense of invalidity by including additional information that it obtained during discovery. *Id.*

On September 14, 2018, Artskills opposed the motion, arguing that RCP should be precluded from amending its counterclaims. Plaintiff's Memorandum Opposing Mot. to Amend, dated Sep. 14, 2018 ("Pl.'s Mem."), ECF No. 78, at 10.

On September 21, 2018, the parties filed responsive claim construction briefs. Plaintiff's Responsive Claim Construction Brief, dated Sept. 21, 2018 ("Pl.'s Resp."), ECF No. 82; Defendant's Responsive Claim Construction Brief, dated Sept. 21, 2018 ("Def.'s Resp."), ECF No. 83.

On September 27, 2018, RCP submitted a reply in support of its motion to amend. Reply, dated Sept. 27, 2018, ECF No. 86.

On December 3, 2018, the Court granted RCP's motion. Ruling and Order on Motion for Leave to Amend, dated Dec. 3, 2018, ECF No. 98.

On December 14, 2018, RCP filed its Second Amended Answer. Second Amended Answer and Counterclaims, dated Dec. 14, 2018, ECF No. 100.

On January 11, 2019, Artskills filed a response to RCP's counterclaims. Response, dated Jan. 11, 2019, ECF No. 105.

On January 21, 2019, the Court entered a schedule for the parties to file supplemental briefing with respect to disputed terms in the asserted Design Patents in RCP's counterclaims. Order, dated Jan. 21, 2019, ECF No. 107.

On February 11, 2019, the parties jointly filed a chart listing the disputed claim terms, and the parties' proposed constructions of them, in the D872, D467, and D253 Patents. Supplemental Joint Disputed Claim Terms Chart, filed Feb. 11, 2019 ("Design Patents Chart"), ECF No. 108.

On February 27, 2019, the parties filed their opening supplemental claim construction briefs with respect to the asserted Design Patents. Plaintiff's Opening Supplemental Claim Construction Brief, dated Feb. 27, 2019 ("Pl.'s Supp. Br."), ECF No. 109; Defendant's Opening Claim Construction Brief, dated Feb. 27, 2019 ("Def.'s Supp. Br."), ECF No. 112.

On March 20, 2019, the parties filed responsive supplemental claim construction briefs. Plaintiff's Responsive Supplemental Claim Construction Brief, dated Mar. 20, 2019 ("Pl.'s Supp. Resp."), ECF No. 116; Defendant's Responsive Supplemental Claim Construction Brief, dated Sept. 21, 2018 ("Def.'s Supp. Resp."), ECF No. 119.

On April 8, 2019, the Court held a claim construction hearing, and reserved decision. Minute Entry, filed Apr. 9, 2019, ECF No. 121; Transcript of Motion Hearing, dated Apr. 8, 2019 ("Tr."), ECF No. 122.

## II.    STANDARD OF REVIEW

"[A] patent claim is that 'portion of the patent document that defines the scope of the patentee's rights.'" *Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 835 (2015) (quoting *Markman*, 517 U.S. at 372).

Since the Supreme Court's decision in *Markman*, "the construction of a patent, including terms of art within its claim, is exclusively within the province of the court." *Markman*, 517 U.S. at 372; *see also Teva*, 135 S. Ct. at 835 ("We held [in *Markman*] that the construction of a patent, including terms of art within its claim, is not for a jury but exclusively for the court to determine. That is so even where the construction of a term of art has evidentiary underpinnings.") (internal citations and quotation marks omitted).

"[A] judge, in construing a patent claim, is engaged in much the same task as the judge would be in construing other written instruments, such as deeds, contracts, or tariffs." *Teva*, 135 S. Ct. 837 (citations omitted). "Courts construe claims by considering the evidence necessary to resolve disputes about claim terms and to assign a fixed, unambiguous, legally operative meaning to the claim." *Liquid Dynamics Corp. v. Vaughan Co.*, 355 F.3d 1361, 1367 (Fed. Cir. 2004) (citing *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)).

"[T]here is no magic formula or catechism for conducting claim construction." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1324 (Fed. Cir. 2005). "Nor is the court barred from considering any particular sources or required to analyze sources in any specific sequence, as long as those sources are not used to contradict claim meaning that is unambiguous in light of the intrinsic evidence." *Id.* (citing *Vitronics*, 90 F.3d at 1583–84; *Intel Corp. v. VIA Techs., Inc.*, 319 F.3d 1357, 1367 (Fed. Cir. 2003)).

## III.    DISCUSSION

"[T]he words of a claim are generally given their ordinary and customary meaning."
*Phillips*, 415 F.3d at 1312 (citations and internal quotation marks omitted). "[T]he ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." *Id.* at 1313 (citations omitted). This is an "objective baseline from which to begin claim interpretation" and is "based on the well-settled understanding that inventors are typically persons skilled in the field of the invention and that patents are addressed to and intended to be read by others of skill in the pertinent art." *Id.* (citations omitted).

"In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Id.* at 1314 (citing *Brown v. 3M*, 265 F.3d 1349, 1352 (Fed. Cir. 2001)). "In many cases that give rise to litigation, however, determining the ordinary and customary meaning of the claim requires examination of terms that have a particular meaning in a field of art." *Id.*

Courts in such cases will typically first consult intrinsic evidence, i.e., the "context of the entire patent, including the specification." *Id.* at 1303. This evidence includes: (1) the words of the claims themselves; (2) the context in which terms are used; (3) the remainder of the specification; (4) other claims in the patent, both asserted and unasserted; and (5) the prosecution history. *Id.* at 1314–15.

"In some cases, however, the district court will need to look beyond the patent's intrinsic evidence and to consult extrinsic evidence in order to understand, for example, the background

science or the meaning of a term in the relevant art during the relevant time period." *Teva*, 135 S. Ct. at 841 (citation omitted). "In cases where those subsidiary facts are in dispute, courts will need to make subsidiary factual findings about that extrinsic evidence." *Id.*

"In some instances, a factual finding will play only a small role in a judge's ultimate legal conclusion about the meaning of the patent term. But in some instances, a factual finding may be close to dispositive of the ultimate legal question of the proper meaning of the term in the context of the patent." *Id.* at 841–42. "The district judge, after deciding the factual dispute, will then interpret the patent claim in light of the facts as he has found them. This ultimate interpretation is a legal conclusion." *Id.* at 841.

"When the parties present a fundamental dispute regarding the scope of a claim term, it is the court's duty to resolve it." *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008). "Thus, '[a] determination that a claim term "needs no construction" or has the "plain and ordinary meaning" may be inadequate when a term has more than one "ordinary" meaning or when reliance on a term's "ordinary" meaning does not resolve the parties' dispute.'" *Eon Corp. IP Holdings v. Silver Spring Networks*, 815 F.3d 1314, 1318 (Fed. Cir. 2016) (quoting *O2 Micro*, 521 F.3d at 1361). But "a court need not attempt the impossible task of resolving all questions of meaning with absolute, univocal finality." *Id.* "Such an endeavor could proceed ad infinitum, as every word—whether a claim term itself, or the words a court uses to construe a claim term—is susceptible to further definition, elucidation, and explanation." *Id.*; *see also Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 803 (Fed. Cir. 1999) ("[O]nly those terms need be construed that are in controversy, and only to the extent necessary to resolve the controversy.") (citation omitted).

The Court first will consider each disputed term in the asserted Utility Patents and then consider each disputed term in the asserted Design Patents.

### A. Disputed Terms in Asserted Utility Patents

As an initial matter, the Court notes that the parties are in agreement that the '352 Patent and the '886 Patent are relatively similar, and that the disputed terms generally have the same meaning in both patents, with the exception that they occasionally use different undisputed terms. For example, in the '352 Patent, all claims describe a "sheet of material" and in the '886 Patent, all claims describe a "blank." These terms are treated by the parties as interchangeable within the context of the asserted Utility Patents, the only difference being that the '352 Patent uses the term "sheet of material," while the '886 Patent uses the term "blank." The Court places these together in brackets, where necessary, to indicate that only one or the other is used in their respective patents.

The Court also notes that while the parties' briefing indicated that they also disputed the meaning of "attached to" in the asserted Utility Patents, they indicated at the *Markman* hearing that they no longer believed construction of this term was necessary. *See* Tr. 10:1–8. Accordingly, the Court will only construe the remaining terms about which the parties have presented a fundamental dispute. *O2 Micro*, 521 F.3d at 1362.

1. **"Pre-Weakened Line"**

| Pl.'s Proposed Construction | Def.'s Proposed Construction | Relevant '352 Patent Claims | Relevant '886 Patent Claims |
|---|---|---|---|
| Pre-weakened line means a line that has been weakened so as to facilitate folding and/or detachment | *For first/second pre-weakened lines*: A line in the [sheet of material/blank] that weakens the [sheet of material/blank] along the line to enable folding without cutting or piercing the [sheet of material/blank]  *For third pre-weakened line*: A line in the [sheet of material/blank] that weakens the [sheet of material/blank] along the line by cuts or piercings extending along the entire line to enable a portion of the [sheet of material/blank] to be detached without additional tools | 1, 3, 8, 10, 12, 16, 17 | 1, 7, 10 |

First, the parties' dispute whether or not the use of "pre-weakened line" in the patent claims is different when the patent refers to the first or second pre-weakened line and when it refers to the third pre-weakened line.

Artskills argues that the use of this term is consistent throughout the patent, and that "[w]hen the same term appears multiple times in a claim" it is presumed to have the same meaning throughout. Pl.'s Br. at 15 (citing *PODS, Inc. v. Porta Stor, Inc.*, 484 F.3d 1359, 1366 (Fed. Cir. 2007) ("We apply a 'presumption that the same terms appearing in different portions of the claims should be given the same meaning unless it is clear from the specification and prosecution history that the terms have different meanings at different portions of the claims.'")).

RCP, however, argues that the term is used in fundamentally different ways depending on whether the claims refer to the first, second, or third pre-weakened lines. *See* Def.'s Br. at 11 ("[I]t is clear that the inventor had different purposes in mind for the first and second pre-weakened lines related to the side panels than the third pre-weakened line by which the header panel is coupled to the display.") (citing *Phillips*, 415 F.3d at 1314).

The Court agrees that "pre-weakened line" has the same meaning throughout both patents, regardless of whether it is used to refer to the first, second, or third pre-weakened line, but disagrees that the term's usage necessarily incorporates the functional limitations that either party seeks to ascribe. Because those limitations are separately described in the claims, a definition that duplicates those limitations is unnecessary.

For example, with Defendant's proposed constructions inserted, claim 3 of the '352 Patent would read: "The multi-panel display device of claim 1 wherein the lines in the sheet of material that weaken the sheet of material along the lines to enable folding without cutting or piercing the sheet of material are fold lines and wherein the line in the sheet of material that weakens the sheet of material along the line by cuts or piercings extending along the entire line to enable a portion of the sheet of material to be detached without additional tools is a perforation line."

This construction would essentially render claim 3 superfluous, as it would appear to be restating that the fold lines are fold lines and the perforation line is a perforation line. *See Merck & Co., Inc. v. Teva Pharm. USA, Inc.*, 395 F.3d 1364, 1372 (Fed. Cir. 2005) (reversing district court's claim construction of the term "about" where it rendered other parts of the claim superfluous); *Elekta Instrument S.A. v. O.U.R. Sci. Int'l, Inc.*, 214 F.3d 1302, 1306 (Fed. Cir. 2000) ("We agree with OSI that the district court erred in interpreting claim 1 to include gamma

units with radiation sources and beam channels located "beginning at the edge of the helmet (0°) and extending to a point between 30°–45° . . . . While Elekta argues that 'extending' should be interpreted as 'to reach' rather than 'to stretch,' we conclude that the key word is 'between,' and that the ordinary meaning of the phrase 'only within a zone extending between' is inescapable. The claim only encompasses 30°–45°. Any other conclusion renders the reference to 30° superfluous.").

With Plaintiff's proposed constructions inserted, claim 3 of the '352 Patent would read: "The multi-panel display device of claim 1 wherein the first and second lines that have been weakened so as to facilitate folding and/or detachment are fold lines and wherein the third line that has been weakened so as to facilitate folding and/or detachment is a perforation line." While this construction would not render claim 3 superfluous, it is unnecessary for the inventor to communicate that the line was weakened to facilitate either folding or detachment, while also communicating that two of the lines were for folding and one was for perforation.

Instead, a "pre-weakened line" can be more simply construed as "a line in the [sheet of material/blank] that has been weakened." With this construction inserted, claim 3 would more simply read: "The multi-panel display device of claim 1 wherein the first and second lines in the sheet of material that have been weakened are fold lines and wherein the third line in the sheet of material that has been weakened is a perforation line."

At the claim construction hearing, RCP argued that such a definition would be insufficient because it would fail to communicate to the jury that the first and second pre-weakened lines were not interchangeable with the third pre-weakened line. *See* Tr. 22:24–23:5, 24:24–25:6. RCP contended that it was important that the Court's construction capture the substantive difference between how the lines are weakened: that the first and second pre-

weakened lines are less weakened, essentially, than the third pre-weakened line. *See* Tr. 25:15–27:1, 27:13–28:10, 34:12–35:5. In RCP's view, the fact that "pre-weakened line" is never used on its own in the asserted Utility Patents, but is always preceded by a modifier, supports its position. *See* Tr. 31:14–34:11.

The Court disagrees.

The jury, which will be adequately supplied by the parties with the full context for the patent claims, will be able to distinguish between the different lines based on other language from the patent claims, specifically the clear distinctions made between the fold and perforation lines in claims 3, 10, and 16 of the '352 Patent.[1] The jury also will be able to distinguish between the different lines based on references to: (1) the side panels being "folded over" about the first and second pre-weakened line in claim 1 of the '352 Patent and claim 7 of the '886 Patent; (2) the header panel being "broken away from the second side panel" along the third pre-weakened line in claim 1 of the '352 Patent; and (3) the header panel being "detachably coupled" to the second side panel along the third pre-weakened line in claim 10 of the '886 Patent.

Accordingly, the Court construes "pre-weakened line" to mean: (1) in the '352 Patent, "a line in the sheet of material that has been weakened"; and (2) in the '886 Patent, "a line in the blank that has been weakened."

---

[1] Those distinctions are not, however, present in the '886 Patent. In the event that, as this litigation proceeds, Artskills were to withdraw its claims under the '352 Patent and proceed only under the '886 Patent, RCP may move for the Court to reconsider this issue of claim construction before trial.

### 2. "Folded state"

| Pl.'s Proposed Construction | Def.'s Proposed Construction | Relevant '352 Patent Claims | Relevant '886 Patent Claims |
|---|---|---|---|
| The first side panel is folded over the center panel about the first pre-weakened line, and the second side panel is folded over the center panel about the second pre-weakened line. | Indefinite | 1, 6, 8, 17 | 7, 8 |

Artskills argues that RCP, in arguing that the term "folded state" is indefinite, is attempting "to use claim construction as a dispositive motion on invalidity." Pl.'s Br. at 23. Artskills contends that this is improper because expert testimony would be required on whether the term is indefinite, and because invalidity is an issue reserved for summary judgment or trial. *Id.* at 23–24.

RCP argues that finding this term indefinite is appropriate because "the Federal Circuit has consistently held that 'a determination of claim indefiniteness is a legal conclusion that is drawn from the court's performance of its duty as the construer of patent claims.'" *Id.* (citing *Personalized Media Commc'ns, LLC v. Int'l Trade Comm'n*, 161 F.3d 696, 706 (Fed. Cir. 1998); *Praxair, Inc. v. ATMI, Inc.*, 543 F.3d 1306, 1319 (Fed. Cir. 2008); *S3 Inc. v. NVIDIA Corp.*, 259 F.3d 1364, 1367 (Fed. Cir. 2001)).

RCP cites to cases, however, merely articulating that indefiniteness is a conclusion of law and not of fact. "The Federal Circuit has advised that '[c]ourts should be cautious not to allow claim construction to morph into a mini-trial on validity.'" *Bedgear, LLC v. Fredman Bros. Furniture Co.*, No. 2:15-cv-6759 (KAM), 2019 WL 911301, at *10 (E.D.N.Y. Feb. 25, 2019) (quoting *Hill-Rom Servs., Inc. v. Stryker Corp.*, 755 F.3d 1367, 1374 (Fed. Cir. 2014)). Moreover, "[a]lthough 'indefiniteness has the same construction underpinnings as a *Markman*

hearing, two reasons make it more appropriate to defer it until summary judgment: (1) the high burden of proof required to show indefiniteness and (2) its potentially dispositive, patent-invalidating nature.'" *Id.* (quoting *Int'l Dev. LLC v. Richmond*, No. 09-CV-2495, 2010 WL 4703779, at *6 (D.N.J. Nov. 12, 2010)).

The Court therefore declines to address RCP's indefiniteness arguments at this stage of the case.

The Court adopts the construction proposed by Artskills for Claim 6 of the '352 Patent, but finds that this construction would be superfluous for Claims 1, 8, and 17 of the '352 Patent, as the term is clearly defined in those claims. *See* '352 Patent at Claims 1, 8, and 17. Likewise, the Court adopts the construction proposed by Artskills for Claim 8 of the '886 Patent, but finds that this construction would be superfluous for Claim 7 of the '886 Patent, as the term is clearly defined in that claim. *See* '886 Patent at Claim 7.

The Court finds it appropriate, however, to modify Artskills's proposed construction by inserting the Court's construction of "pre-weakened line" into the definition of "folded state," to ensure that there is no ambiguity about the meaning of "folded state."

Thus, the Court construes "folded state" to mean: (1) in Claim 6 of the '352 Patent, "the state in which the first side panel is folded over the center panel about the first line in the sheet of material that has been weakened, and the second side panel is folded over the center panel about the second line in the sheet of material that has been weakened"; and (2) in Claim 8 of the '886 Patent, "the state in which the first side panel is folded over the center panel about the first line in the blank that has been weakened, and the second side panel is folded over the center panel about the second line in the blank that has been weakened."

### 3. "Fold line"

| Pl.'s Proposed Construction | Def.'s Proposed Construction | Relevant '352 Patent Claims | Relevant '886 Patent Claims |
|---|---|---|---|
| A pre-weakened line that facilitates folding | A line in the sheet of material that weakens the sheet of material along the line by folding or compressing the sheet of material without cutting or piercing the sheet of material | 3, 10, 16 | n/a |

RCP's proposed construction includes the additional limitation of "compressing," as well as the limitation that such folding or compressing occur "without cutting or piercing the [sheet of material/blank]." Artskills objects to these additional limitations, noting that "compressing" is a term that does not appear in the intrinsic evidence, and that none of the claims specify that a fold line must be created by a particular method. Pl.'s Resp. at 17.

The Court agrees that the additional limitations are unnecessary, particularly since the ordinary meaning of "fold" does not imply that cutting or piercing would be necessary.

The Court also finds it unnecessary, however, to re-introduce the term "pre-weakened line"—or its construction—into this definition. Every time the term "fold line" is used, it is already preceded by the term "pre-weakened lines." *See, e.g.*, '352 Patent at Claim 3 ("the first and second pre-weakened lines are fold lines"); *see also id.* at Claims 10, 16. Including "pre-weakened line," or this Court's construction of "pre-weakened line," in this term's construction creates a redundancy.

Accordingly, the Court construes "fold line" in the '352 Patent as: "a line along which the sheet of material may be folded."

### 4. "Perforation line"

| Pl.'s Proposed Construction | Def.'s Proposed Construction | Relevant '352 Patent Claims | Relevant '886 Patent Claims |
|---|---|---|---|
| A pre-weakened line that facilitates detachment or separation | A line in the sheet of material that weakens the sheet of material along the line by many small cuts or holes extending along the entire line to enable a portion of the sheet of material to be detached along the line without additional tools | 3, 10, 16 | n/a |

Artskills contends that the additional specification sought by RCP as to how the perforation line is formed is not supported by the intrinsic evidence in the patent. *See* Pl.'s Br. at 31. First, Artskills argues that the claims themselves do not restrict how the perforations may be formed. *See* Pl.'s Br. at 30–31; Tr. 49:12–21. Second, Artskills points out that, while the patent specification for the '352 Patent states that in certain embodiments the line "can be formed by a plurality of small holes," it also can be formed "by other techniques such as, for example without limitation, a deep depression in the blank." '352 Patent at col. 5, 46–56; *see* Tr. 16:18–17:5.

Because the claims themselves do not limit the manner in which a perforation line may be formed, the Court agrees that it is unnecessary to construe the term "perforation line" to include such limitations.

The Court also finds it unnecessary to re-introduce the term "pre-weakened line"—or its construction—into this definition. As with the term, "fold line," every time the term "perforation line" is used, it is already preceded by the term "pre-weakened line." *See, e.g.*, '352 Patent at Claim 3 ("the third pre-weakened line is a perforation line."); *see also id.* at Claims 10, 16. Including "pre-weakened line," or the Court's construction of "pre-weakened line," in this term's construction creates a redundancy.

Accordingly, the Court construes "perforation line" in the '352 Patent as: "a line along which a portion of the sheet of material may be detached or separated."

## B. Disputed Terms in Asserted Design Patents

"Because a claimed design is better represented by an illustration rather than a description . . . 'the preferable course ordinarily will be for a district court not to attempt to "construe" a design patent claim by providing a detailed verbal description of the claimed design.'" *Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*, 796 F.3d 1312, 1333 (Fed. Cir. 2015) (quoting *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 679 (Fed. Cir. 2008)). However, "there are a number of claim scope issues which may benefit from verbal or written guidance, among them the distinction between features of the claimed design that are ornamental and those that are purely functional." *Id.* (citing *Egyptian Goddess*, 643 F.3d at 680).

This is because "a design patent is invalid if its overall appearance is dictated by function, and therefore primarily functional," but not invalid if "the overall appearance of a claimed design is not primarily functional . . . even if certain elements have functional purposes." *Id.* (citing *L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1123 (Fed. Cir. 1993); *Richardson v. Stanley Works, Inc.*, 597 F.3d 1288, 1293–94 (Fed. Cir. 2010)). In the latter case, the scope of the claim "must be limited to the ornamental aspects of the design, and does not extend to 'the broader general design concept.'" *Id.* (quoting *OddzOn Prods., Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1405 (Fed. Cir. 1997)). In such cases, claim construction by the court is necessary, but its scope is narrow.

For example, in *Richardson*, the Federal Circuit upheld a lower court's claim construction decision because the "[t]he district court here properly factored out the functional aspects of Richardson's design as part of its claim construction." *Richardson*, 597 F.3d at 1293.

It noted that "[a] claim to a design containing numerous functional elements, such as here, necessarily mandates a narrow construction." *Id.* The Federal Circuit further explained that its earlier *en banc Egyptian Goddess* opinion did not "compel[ ] a different outcome." *Id.*; *see also Metrokane, Inc. v. Wine Enthusiast*, 185 F. Supp. 2d 321, 326–27 (S.D.N.Y. 2002) ("Because a design patent only protects the novel, ornamental aspects of the design as shown in the patent, a court must identify those aspects in order to construe the scope of protection of the patent.") (citing *Elmer v. ICC Fabricating, Inc.*, 67 F.3d 1571, 1577 (Fed. Cir. 1995); *Hsin Ten Enter. USA, Inc. v. Clark Enters.*, 149 F. Supp. 2d 60, 63 (S.D.N.Y. 2001)).

Indeed, the Federal Circuit later reversed a district court's claim construction ruling because "the fact finder should not focus on the particular designs of these elements when determining infringement, but rather focus on what these elements contribute to the design's overall ornamentation." *Sport Dimension, Inc. v. Coleman Co., Inc.*, 820 F.3d 1316, 1322–23 (Fed. Cir. 2016). As the Federal Circuit noted there, "[b]ecause of the design's many functional elements and its minimal ornamentation, the overall claim scope of the claim is accordingly narrow." *Id.* (citing *Ethicon*, 796 F.3d at 1334).

### 1. "Blank"

| Pl.'s Proposed Construction | Def.'s Proposed Construction |
|---|---|
| A piece of material prepared to be made into a multi-panel display [for D253 & D467 Patents] or a tri-fold display [for D872 Patent] by further operation. | To the extent the Court determines that construction of the term "blank" is appropriate, this term is indefinite. To the extent the Court determines that construction is appropriate and possible for "blank" at this stage, RCP proposes the following construction: A single piece of material to be assembled into a multi-panel display [for D253 & D467 Patents] or a tri-fold display [for D872 Patent] |

RCP argues that "construction of an individual term from the specification is improper because a design patent includes a single claim that is represented by the figures." Joint Supplemental Claim Construction Chart at 2 (citing Manual of Patent Examining Procedure ("MPEP") at § 1502.01(C); 37 C.F.R.1.154(b)(6); *Levi Strauss & Co. v. Golden Trade, S.r.L.*, No. 90-cv-6291, 1995 WL 710822, at *38 n.13 (S.D.N.Y. Dec. 1, 1995); D.I. 41 at 11).

The Court disagrees.

The same basic principles of claim construction govern design patents and utility patents and the Court must resolve all fundamental disputes regarding the scope of a claim term raised by the parties before the case may proceed to a jury trial. *See O2 Micro*, 521 F.3d at 1361–62 ("By failing to construe this term, the district court left the jury free to consider these arguments . . . . the parties' arguments regarding the meaning and legal significance of the 'only if' limitation were improperly submitted to the jury . . . . When the parties present a fundamental dispute regarding the scope of a claim term, it is the court's duty to resolve it."); *see also Times Three Clothier, LLC v. Spanx, Inc.*, Nos. 13 Civ. 2157 & 13 Civ. 7260 (DLC), 2014 WL 1688130, at *3 (S.D.N.Y. Apr. 29, 2014) (explaining that because of the court's duty to resolve a fundamental dispute regarding the scope of a claim term, "[r]esolution of discrete disputes regarding [design patent] claim scope may be appropriate, rather than a verbal description of the entire claim.") (citing *O2 Micro*, 521 F.3d at 1362; *Egyptian Goddess*, 543 F.3d at 679).

Construction of the term "blank" therefore is required.

RCP argues that the term "blank" is indefinite. For the reasons addressed above, the Court declines to address RCP's indefiniteness arguments at this stage of the case.

In the alternative, RCP proposes a construction similar to Artskills's proposed construction.

At the claim construction hearing, both parties agreed that a "blank" is a single piece of material, *see* Tr. 84:24–85:6; the only disagreement is whether or not the blank is "to be assembled into" a tri-fold or multi-panel display, or "made into" a tri-fold or multi-panel display "by further operation." Artskills objected that the phrase "assembled into" was potentially too narrow, to the extent that setting up the tri-fold or multi-panel displays requires some disassembly—i.e., separating the header panel from the side panel. *See* Tr. 86:13–87:1. In response, the Court noted that many products requiring "assembly" are understood, in their ordinary meaning, to require some separation of pieces or components as part of the process of assembling them. *See* Tr. 87:3–88:3. Artskills indicated that, as long as that ordinary understanding was followed, it had no objection to the Court adopting the term in its claim construction. *See* Tr. 88:4–5.

The Court therefore adopts RCP's proposed construction and construes the term "blank" as follows: (1) in the D872 Patent, "a single piece of material to be assembled into a tri-fold display"; and (2) in the D253 & D467 Patents, "a single piece of material to be assembled into a multi-panel display."

2. **"I claim the ornamental design for a tri-fold display blank, as shown and described." (D872 Patent)**
**"I claim the ornamental design for a multi-panel display blank, as shown and described." (D467 & D253 Patents)**

| Patent | Pl.'s Proposed Construction | Def.'s Proposed Construction |
|--------|----------------------------|------------------------------|
| D872 | The claim of the D'872 patent means an ornamental design for a trifold display blank, as shown and described in Figs. 1–3 (flat blank configuration), Fig. 4 (partially assembled configuration), and Figs. 5–11 (assembled configuration). The ornamental design may permit, but does not include, an intermediate configuration in which the blank is folded and sealed closed for distribution and sale. | Indefinite. To the extent the Court determines a construction is possible at this stage, RCP proposes the following construction: The ornamental design for a single piece of material to be assembled into a tri-fold display as shown in Figs. 5–11, including at least the ornamental design for the configuration of linear segments of equal length as shown in Figures 1–3 and the shape and positioning of slots as shown in Figures 1–4. |
| D467 | The claim of the D'467 patent means an ornamental design for a multi-panel display blank, as shown and described in Figs. 1–5 (flat blank configuration), Fig. 6 (partially assembled configuration), and Figs. 7–13 (fully assembled configuration). The ornamental design may permit, but does not include, an intermediate configuration in which the blank is folded and sealed closed for distribution and sale. | Indefinite. To the extent the Court determines a construction is possible at this stage, RCP proposes the following construction: The ornamental design for a single piece of material to be assembled into a multi-panel display as shown in Figs. 7–13, including at least the ornamental design for the configuration of linear segments of equal length as shown in Figures 1–5 and the shape and positioning of slots as shown in Figures 1–6. |
| D253 | The claim of the D'253 patent means an ornamental design for a multi-panel display blank, as shown and described in Figs. 1–2 (flat blank configuration), Fig. 3 (partially assembled configuration), and Figs. 4–10 (fully assembled configuration). The ornamental design may permit, but does not include, an intermediate configuration in which the blank is folded and sealed closed for distribution and sale. | Indefinite. To the extent the Court determines a construction is possible at this stage, RCP proposes the following construction: The ornamental design for a single piece of material to be assembled into a multi-panel display as shown in Figs. 4–10, including at least the ornamental design for the configuration of linear segments of equal length as shown in Figures 1–2 and the shape and positioning of slots as shown in Figures 1–3. |

RCP argues these claims are all indefinite. For the reasons addressed above, the Court declines to address RCP's indefiniteness arguments at this time.

The parties have three disagreements as to the scope of these claims: (1) whether the claims are for all three configurations of the display, or simply the flat blank configuration; (2) whether the claim also includes the ornamental design of an undepicted "intermediate configuration in which the blank is folded and sealed closed for distribution and sale"; and (3) which features constitute the "ornamental" aspects of the designs.

RCP primarily argues that the claim must be limited to the ornamental design shown in the flat blank configuration because a design patent by its nature is limited to a single article of manufacture. The prosecution history, they assert, indicates that the patent examiner from the USPTO required amending all references in the D872 patent to a "tri-fold display" to refer instead to a "tri-fold display blank," including in the title and claim description. *See* Def.'s Supp. Br. at 30. RCP also points to extrinsic evidence—expert testimony and dictionary definitions— which it argues support its position that, once the blank has been assembled somehow, including by separating any pieces from it, it ceases to be referred to as a blank; accordingly, because the claim is to the ornamental design of a "blank," the Court must limit the claim to the design shown in the flat blank configuration.

Artskills argues, however, that it is "improper to use claim construction to read out the majority of the figures in the design patent," as a "design patent claim is to be construed as a whole, in view of *all* of the drawings." Pl.'s Supp. Resp. at 20 (citing *Crocs, Inc. v. Int'l Trade Comm'n*, 598 F.3d 1294, 1302–03 (Fed. Cir. 2010); *Contessa Food Prods., Inc. v. Conagra, Inc.*, 282 F.3d 1370, 1380 (Fed. Cir. 2002); *Anderson v. Kimberly-Clark Corp.*, 570 F. App'x 927, 933 (Fed. Cir. 2014)).

Artskills' argument, however, obscures the claim construction inquiry for design patents and its focus on the ornamental, rather than the functional, features of the design. *See Sport*

*Dimension, Inc.*, 820 F.3d at 1322–23 ("Because of the design's many functional elements and its minimal ornamentation, the overall claim scope of the claim is accordingly narrow."); *Richardson*, 597 F.3d at 1293 ("The district court here properly factored out the functional aspects of Richardson's design as part of its claim construction."); *see also Ethicon*, 796 F.3d at 1333–34 ("Thus, we affirmed the construction of the district court, which removed the generalized football shape, tail, and fins from the scope of the claim, limiting the design claim to its purely ornamental features . . . .") (citing *OddzOn*, 122 F.3d at 1405, 1400).

Indeed, while the Federal Circuit expressed concern in *Crocs* over an "undue emphasis on particular features of the design rather than examination of the design as a whole," *Crocs*, 598 F.3d at 1302, this concern was limited to the ornamental features of the design. *See id.* at 1304 ("In other words, the concentration on small differences in isolation distracted from the overall impression of the claimed ornamental features."). Likewise, in *Contessa*, the Federal Circuit recognized that "the district court properly construed the scope of the claimed invention to be its 'overall ornamental visual impression, rather than . . . the broader general design concept.'" *Contessa*, 282 F.3d at 1377 (quoting *OddzOn*, 122 F.3d at 1405).

Here, the Court is faced with design patents that reflect views of three different physical configurations of a tri-panel or multi-panel display, while only claiming the ornamental design for a "blank." Because only the ornamental design of the blank is claimed, only the figures that depict the product in its form as a blank are relevant to the Court's determination of the ornamental design of the blank. Those figures are: (1) in the D872 Patent, Figures 1–3; (2) in the D467 Patent, Figures 1–5; and (3) in the D253 Patent, Figures 1–2.

With respect to the "intermediate configuration," the Court agrees with RCP that it would be improper to construe ornamental design elements from a configuration that is not even

depicted in the figures. *See Crocs*, 598 F.3d at 1302 ("Design patents are typically claimed as shown in drawings, and claim construction must be adapted to a pictorial setting."); *see also id.* at 1302-1303 ("[A]n illustration depicts a design better than it could be by any description and a description would probably not be intelligible without the illustration.")(internal citation and quotation marks omitted).

Finally, the parties disagree as to which elements are functional as opposed to ornamental.

As a threshold matter, Artskills argues that it would be inappropriate at this stage of the proceedings to "call out" certain features as functional or ornamental because functionality is a fact-intensive inquiry. As discussed above, however, that determination is a critical part of design patent claim construction. *See Richardson*, 597 F.3d at 1293 ("The district court here properly factored out the functional aspects of Richardson's design as part of its claim construction . . . . A claim to a design containing numerous functional elements, such as here, necessarily mandates a narrow construction."); *Sport Dimension*, 820 F.3d at 1323 ("Because of the design's many functional elements and its minimal ornamentation, the overall claim scope of the claim is accordingly narrow.") (citing *Ethicon*, 796 F.3d at 1334); *Ethicon*, 796 F.3d at 1333–34 ("Although the existence of a functional purpose for the football-shape, tail, and fin elements of the underlying article did not alone invalidate the design patent—as the claimed design also included some purely ornamental features—such functional aspects at least necessitated cabining the scope of the design claim in order to prevent the claim from encompassing the general design concept of a football with tails and fins. Thus, we affirmed the construction of the district court, which removed the generalized football shape, tail, and fins from the scope of the claim, limiting

the design claim to its purely ornamental features . . . .") (citing *OddzOn*, 122 F.3d at 1405, 1400).

Artskills then argues, in the alternative, that the Court cannot reach such a determination because RCP has not presented evidence to support its contentions as to which elements are functional.

Nevertheless, the parties have identified four elements that they believe are ornamental. RCP initially argued that only the configuration of linear segments of equal length and the shape and positioning of slots in the header panel were ornamental. Artskills argues that two other features are also ornamental: the size/shape of the rounded panel corners, and the width/length/shape of the header and adhesive panels. At the claim construction hearing, RCP conceded that the rounded corners are somewhat ornamental and that it would not necessarily be opposed to including it in the claim construction—though it also argued that the rounded corners are primarily functional, because the inventor testified in his deposition and the related asserted patents' specifications indicate that rounded corners were chosen to reduce the likelihood they would become bent or otherwise damaged. *See* Tr. 130:9–131:5.

Because the parties have identified no other features that could be ornamental, the Court finds it appropriate to limit the scope of claim construction to those four features.[2]

The Court thus will limit the claims to the "ornamental aspects of the design" of the blank, rather than the more abstract expression of the "ornamental design" of the blank, following the approach approved by the Federal Circuit in *Richardson*. *See Richardson*, 597 F.3d at 1293 ("If the patented design is primarily functional rather than ornamental, the patent is

---

[2] The Court may, however, consider whether this claim scope may be expanded to include additional features upon the presentation of further evidence by the parties—provided that any attempt to amend the claim scope must be addressed before trial.

invalid. However, when the design also contains ornamental aspects, it is entitled to a design patent whose scope is limited to those aspects alone and does not extend to any functional elements of the claimed article.").

Accordingly, the Court limits the scope of the claims of the design patents as follows: (1) the sole claim of the D872 Patent to "the ornamental aspects of the design of a single piece of material to be assembled into a tri-fold display, as shown in Figures 1–3, specifically the configuration of linear segments of equal length, the shape and positioning of slots in the header panel, the size/shape of the rounded panel corners, and the width/length/shape of the header and adhesive panels"; (2) the sole claim of the D467 Patent to "the ornamental aspects of the design of a single piece of material to be assembled into a multi-panel display, as shown in Figures 1–5, specifically the configuration of linear segments of equal length, the shape and positioning of slots in the header panel, the size/shape of the rounded panel corners, and the width/length/shape of the header and adhesive panels"; and (3) the sole claim of the D253 Patent to "the ornamental aspects of the design of a single piece of material to be assembled into a multi-panel display, as shown in Figures 1–2, specifically the configuration of linear segments of equal length, the shape and positioning of slots in the header panel, the size/shape of the rounded panel corners, and the width/length/shape of the header and adhesive panels."

### IV.    CONCLUSION

For the reasons stated above, the Court construes the disputed terms of the asserted Utility Patents as follows:

| Disputed Term | Court's construction | |
|---|---|---|
| | **'352 Patent** | **'886 Patent** |
| "Pre-weakened line" | A line in the sheet of material that has been weakened. | A line in the blank that has been weakened. |
| "Folded state" | [*in Claim 6 only*]: The state in which the first side panel is folded over the center panel about the first line in the sheet of material that has been weakened, and the second side panel is folded over the center panel about the second line in the sheet of material that has been weakened. | [*in Claim 8 only*]: The state in which the first side panel is folded over the center panel about the first line in the blank that has been weakened, and the second side panel is folded over the center panel about the second line in the blank that has been weakened. |
| "Fold line" | A line along which the sheet of material may be folded. | n/a |
| "Perforation line" | A line along which a portion of the sheet of material may be detached or separated. | n/a |

The Court construes the disputed terms of the asserted Design Patents as follows:

| Disputed Term | Court's construction |
|---|---|
| "Blank" (D872 Patent) | A single piece of material to be assembled into a tri-fold display. |
| "Blank" (D467 & D253 Patents) | A single piece of material to be assembled into a multi-panel display. |
| "I claim the ornamental design for a tri-fold display blank, as shown and described." (D872 Patent) | The ornamental aspects of the design of a single piece of material to be assembled into a tri-fold display, as shown in Figures 1–3, specifically the configuration of linear segments of equal length, the shape and positioning of slots in the header panel, the size/shape of the rounded panel corners, and the width/length/shape of the header and adhesive panels. |
| "I claim the ornamental design for a multi-panel display blank, as shown and described." (D467 Patent) | The ornamental aspects of the design of a single piece of material to be assembled into a multi-panel display, as shown in Figures 1–5, specifically the configuration of linear segments of equal length, the shape and positioning of slots in the header panel, the size/shape of the rounded panel corners, and the width/length/shape of the header and adhesive panels. |
| "I claim the ornamental design for a multi-panel display blank, as shown and described." (D253 Patent) | The ornamental aspects of the design of a single piece of material to be assembled into a multi-panel display, as shown in Figures 1–2, specifically the configuration of linear segments of equal length, the shape and positioning of slots in the header panel, the size/shape of the rounded panel corners, and the width/length/shape of the header and adhesive panels. |

The parties are directed to meet, confer, and jointly propose a schedule for all remaining pre-trial deadlines, including for any further discovery and briefing of dispositive motions, by **May 17, 2019**.

**SO ORDERED** at Bridgeport, Connecticut, this 1st day of May, 2019.

  /s/ Victor A. Bolden
Victor A. Bolden
United States District Judge